Glen OSBORNE *v.*
ARKANSAS DEPARTMENT OF HUMAN SERVICES

CA 06-817                                    252 S.W.3d 138

Court of Appeals of Arkansas
Opinion delivered March 7, 2007

*Christian Legal Service*, by: *Leah Lanford* and *Leah Chavis*, for appellant.

*Gray Allen Turner*, Arkansas Dep't of Health & Human Servs., Office of Chief Counsel, for appellant.

KAREN R. BAKER, Judge. Appellant, Glen Osborne, appeals from the termination of his parental rights to his two children, T.O. and D.O. Appellant's sole argument on appeal is that the trial court erred in terminating his "parental rights by default, and then, in the written order of termination, relying on evidence from prior proceedings which were not incorporated into the termination hearing." We affirm.

This case began on January 3, 2005, when the Department of Human Services (DHS) removed two children[1] from appellant's home. A seventy-two-hour hold was placed on the children on January 5, 2005. A petition for emergency custody was filed on January 7, 2005, and an emergency order was entered that same day. The affidavit of facts attached to the petition for emergency custody stated that on January 5, 2005, the Child Abuse Hotline

---

[1] DHS actually took three children from appellant's home. However, only two of the children, T.O. and D.O., were allegedly appellant's biological children. The third child removed from appellant's home belonged to Penny Bowers, also the mother of T.O. and D.O., and Joseph Brown.

received a third report alleging that appellant was not adequately supervising T.O. and D.O. The report listed appellant's address on Pearl Street in Rogers, Arkansas. The affidavit stated that an investigation revealed that appellant left the children at home with a person named Kelly Hutchinson while he was at work. In appellant's home, however, the case worker found that there was no running water; that the only source of heat was the gas stove burner, which was turned on high; and that the children were "filthy."

After DHS initiated the seventy-two-hour hold on the children, the case worker returned to appellant's home to pick them up. When he arrived, he found that appellant had taken the children to a "friend's" home. The case worker spoke with appellant at that point, and appellant told him that his home was not suitable for the children and that he had a roommate who was using methamphetamine. The affidavit stated that it was believed, at that point, that appellant was living at the Traveler's Inn on Highway 71B in Rogers.

On January 26, 2005, a probable cause order was entered finding that there was probable cause to find that there were emergency conditions which necessitated removal of the children and that it was contrary to the welfare of the children to be returned to the home. Furthermore, an adjudication order was entered on March 31, 2005, finding that the children were dependent- neglected and that the allegations in the petition for emergency custody were true and correct. Specifically, as to appellant, the court found that at the time of the children's removal, appellant had failed to secure and maintain appropriate housing for them. He allowed them to remain in a home that lacked appropriate heat and water and that was environmentally hazardous to their health and safety. He also allowed them to be exposed to his roommate, who he admitted was using methamphetamine. The trial court further found that appellant lacked stable and appropriate housing for himself and the children and, therefore, had an ongoing inability to provide the children with necessary and appropriate shelter. Appellant advised the case worker that on the day the children were removed from his custody, he was living in a hotel in Rogers. Moreover, the court found that the children were in need of the services of DHS and that return to the custody of the parents was contrary to the welfare

of the children and continuation of custody with DHS was in the best interest of, and necessary to, the protection of the children's health and safety.

The first termination-of-parental-rights hearing was scheduled for January 17, 2006. Appellant did not appear at the hearing. His counsel was present and explained to the court that she had not spoken with appellant, but that it was her understanding that he had called DHS the day before to request transportation to the hearing. Without objection from appellant's counsel, the trial court admitted numerous exhibits into evidence. For reasons unrelated to appellant's absence, the trial court then continued the termination hearing until February 10, 2006. Appellant also did not appear at the February 10, 2006 termination hearing. The following dialogue took place in regard to appellant's absence:

> Ms. MULLINS: Your Honor, as to Glen Osborne, he is not present. At the last hearing, I believe Ms. Hamilton had requested a continuance, he was not here at that hearing. So, at this point, I would move for a Default Judgment in regards to him.
>
> Ms. HAMILTON: Your Honor, at the last hearing I was under the impression that he was ill and not able to arrive for Court. He left a message at my office on January 17th while I was here. I tried to call him back, I've had no contact with him. I tried calling him this week — the number I have for him says he doesn't live there anymore. So, Your Honor, I don't know where he is, or anything.
>
> Ms. SCRIBNER: I would have no objection to a Default Judgment, I think it would be appropriate.
>
> THE COURT: All right. The Motion for Default Judgment of Termination of Parental Rights of Glen Osborne to [T.O.] and [D. O.] is granted. I find it is in those children's best interest that his parental rights be terminated. And that that matter, with regard to him, be set for further proceedings before this Court.

After the preceding dialogue, the termination hearing continued with testimony from the family service worker and the mother. After the termination hearing, the trial court terminated appellant's parental

rights to T.O. and D.O. An Order Terminating Parental Rights of appellant to T.O. and D.O. was entered on April 11, 2006. The Order Terminating Parental Rights specifically and thoroughly addressed each element of the statute and the facts supporting each of those elements, as they pertained to appellant.

Our standard of review in termination-of-parental-rights cases is well settled. When the issue is one involving the termination of parental rights, there is a heavy burden placed upon the party seeking to terminate the relationship. *Cobbs v. Ark. Dep't of Human Servs.*, 87 Ark. App. 188, 189 S.W.3d 487 (2004) (quoting *Johnson v. Ark. Dep't of Human Servs.*, 78 Ark. App. 112, 119, 82 S.W.3d 183, 187 (2002)). Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. *Chase v. Ark. Dep't of Human Servs.*, 86 Ark. App. 237, 184 S.W.3d 453 (2004) (quoting *Bearden v. Ark. Dep't of Human Servs.*, 344 Ark. 317, 328, 42 S.W.3d 397, 403-04 (2001)). Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child. *Id*. Pursuant to Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2005), the facts warranting termination of parental rights must be proven by clear and convincing evidence. Clear and convincing evidence is the degree of proof that will produce in the fact-finder a firm conviction regarding the allegation sought to be established. *Anderson v. Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992). When the burden of proving a disputed fact in equity is by clear and convincing evidence, the question that we must answer on appeal is whether the trial court's finding that the disputed fact was proven by clear and convincing evidence is clearly erroneous. *Id*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Brewer v. Ark. Dep't of Human Servs.*, 71 Ark. App. 364, 43 S.W.3d 196 (2001). We must give due regard to the opportunity of the trial court to judge the credibility of witnesses. *McFarland v. Ark. Dep't of Human Servs.*, 91 Ark. App. 323, 210 S.W.3d 143 (2005). Additionally, we have noted that in matters involving the welfare of young children, we will give great weight to the trial judge's personal observations. *See id*.

An order forever terminating parental rights must be based upon clear and convincing evidence that the termination is in the best interests of the child, taking into consideration the likelihood that the child will be adopted and the potential harm caused by

continuing contact with the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). In addition to determining the best interests of the child, the court must find clear and convincing evidence that circumstances exist that, according to the statute, justify terminating parental rights. Ark. Code Ann. § 9-27-341(b)(3)(B). One such set of circumstances that may support the termination of parental rights is when the "juvenile has been adjudicated by the court to be dependent-neglected and has continued out of the custody of the parent for twelve (12) months and, despite a meaningful effort by the department to rehabilitate the parent and correct the conditions that caused removal, those conditions have not been remedied by the parent." Ark. Code Ann. § 9-27-341(b)(3)(B)(i)(a).

We first address the portion of appellant's argument that alleges that the trial court erred in terminating his parental rights "by default." We recognize that the trial judge used the term "default judgment," but the judge clearly misspoke given that the court evaluated the evidence and made factual determinations before terminating appellant's parental rights. *See Diebold v. Myers Gen. Agency, Inc.,* 292 Ark. 456, 731 S.W.2d 183 (1987) (holding that when a judgment is based upon evidence presented to the court at a trial, as opposed to being based on the failure of a party to appear or attend, the judgment is not a default judgment, and this rule does not apply). The trial court's extensive consideration of the evidence was appropriate and necessary given that the nature of the proceedings involved fundamental rights.

Our supreme court has recognized that a parent's right to the care and control of his or her child is a fundamental liberty and that termination of parental rights is an extreme remedy in derogation of the natural rights of the parents. *Jones v. Ark. Dep't of Human Servs.,* 361 Ark. 164, 205 S.W.3d 778 (2005) (citing *Camarillo-Cox v. Ark. Dep't of Human Servs.,* 360 Ark. 340, 201 S.W.3d 391 (2005); *Trout v. Ark. Dep't of Human Servs.,* 359 Ark. 283, 197 S.W.3d 486 (2004); *Linder v. Linder,* 348 Ark. 322, 72 S.W.3d 841 (2002); *Ark. Dep't of Human Servs. v. Huff,* 347 Ark. 553, 65 S.W.3d 880 (2002)). The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. *Santosky v. Kramer,* 455 U.S. 745 (1982). Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. *Id.* If anything, persons faced with

forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting State intervention into ongoing family affairs. *Id.* When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures. *Id.*

In *Thompson v. Arkansas Social Services*, 282 Ark. 369, 375-76, 669 S.W.2d 878, 881 (1984) (quoting *Davis v. Smith*, 266 Ark. 112, 583 S.W.2d 37 (1979)), the court stated:

> The concern of this court for the preservation of these [parental] rights has been expressed over a long period of time . . . . [W]e recognized the rights of parents of good moral character, however poor and humble they might be, if able to support their child in their own style of life, not, as a cardinal principle of law and nature, to be deprived of parental privileges, except when urgently necessary to afford the child reasonable protection. Parental rights and the integrity of the family unit have always been a concern of this state and their protection regarded as a proper function of the court. They have been classified as essential rights, basic civil rights, and personal rights more precious than property rights. They have been said to be fundamental rights . . . . Certainly there remains no lingering doubt about the fact that the rights of parents to the care, custody and upbringing of their children are the subject of constitutional protection on both due process and equal protection standards.

Our supreme court has recognized the court's burden in ensuring the protection of a parent's fundamental rights and has compared termination of parental rights proceedings to criminal proceedings. Both address state action affecting fundamental rights. The court stated in *Jones v. Arkansas Department of Human Services*, 361 Ark. 164, 205 S.W.3d 778 (2005), that the deprivation of parental rights has been found to be in many ways similar to the deprivation of liberty at stake in criminal cases, as the court had previously compared termination proceedings with criminal proceedings in circumstances involving the right to counsel. *Id.* (citing *Linker-Flores v. Ark. Dep't of Human Servs.*, 359 Ark. 131, 194 S.W.3d 739 (2004) (holding that counsel representing a parent in a termination proceeding is required to file a no-merit brief comparable to that required under *Anders v. California*, 386 U.S. 738 (1967), where there appears to be no meritorious grounds for appeal); *Baker v. Ark. Dep't of Human Servs.*, 340 Ark. 42, 8 S.W.3d 499 (2000) (holding that although termination cases are civil in

nature, the principles that require payment of attorney's fees for representing an indigent criminal defendant are applicable to termination cases as well)). Moreover, our court has stated that few consequences of judicial action are so grave as the severance of natural family ties. *Benedict v. Ark. Dep't of Human Servs.*, 96 Ark. App. 395, 242 S.W.3d 305 (2006) (citing *Santosky*, 455 U.S. at 788 (Rehnquist, J., dissenting)). Even the convict committed to prison and thereby deprived of his physical liberty often retains the love and support of family members. *Id.*

■ Here we find that the trial judge did not truly enter a default judgment against appellant, despite the statement at the beginning of the hearing that he was granting the oral motion for a default judgment against the appellant. In the order terminating parental rights, the trial judge properly addressed each element of the termination-of-parental-rights statute and all of the evidence supporting each element, first as to the mother and then again as it applied to appellant. The court's obligation was to determine the best interest of the children, regardless of the parent's participation in the proceeding. While appellant was not present at the termination hearing, in order to meet its burden, the State proceeded by putting on additional testimony and evidence. At the conclusion of the hearing, the trial judge considered all of the evidence and testimony relating to appellant in making his decision to terminate appellant's parental rights. This approach satisfied both the court's obligation to determine the best interest of the children and to safeguard any constitutional protections.

■ The second portion of appellant's argument is that the trial court erred in relying on evidence from prior proceedings in the court's written order that were not incorporated into the termination hearing. In *Neves da Rocha v. Arkansas Department of Human Services*, 93 Ark. App. 386, 219 S.W.3d 660 (2005), this court stated:

> The process through which a parent or parents travel when a child is removed from their home consists of a series of hearings-probable cause, adjudication, review, no reunification, disposition, and termination. All of these hearings build on one another, and the findings of previous hearings are elements of subsequent hearings. "[T]he proceedings and orders pertaining to the termination of parental rights [are] in fact a continuation of the original dependency–neglect case." *Wade v. Arkansas Dep't of Human Servs.*, 337 Ark. 353, 361, 990 S.W.2d 509, 514 (1999).

Under this holding, all of the hearings, testimony and evidence from earlier proceedings are incorporated into the hearing on the termination of parental rights.[2] As stated in *Neves da Rocha*, the hearings build on one another and the findings of previous hearings are elements of subsequent hearings. Therefore, we find that the trial court did not err in relying on testimony and evidence from previous hearings in determining whether appellant's parental rights should be terminated.

Affirmed.

GLOVER and MARSHALL, JJ., agree.

---

[2] We note that footnote 2 from *Long v. Arkansas Department of Human Services*, 369 Ark. 74, 250 S.W. 3d 560 (2007) states:

> Notably, the circuit court, in its termination order, did not take judicial notice and incorporate by reference into the record all pleadings and testimony in the case that occurred before the termination-of-parental-rights hearing. The circuit court, however, did take judicial notice of its prior orders issued in this case. Thus, our review of the case preceding the termination hearing is limited to the circuit court's prior orders.

Even if this statement from the footnote in *Long* is interpreted to require the trial court to take judicial notice and incorporate by reference all prior proceedings before they can be considered in the termination of parental rights hearing, appellant's argument is unavailing. At the first scheduled termination of parental rights hearing, before that hearing was continued at appellant's request, the trial court accepted into evidence without objection numerous documents from the previous proceedings. Those documents support the findings made in the trial court's written order.