
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV–15–650

| | |
|---|---|
| MICHAEL EDWARDS<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and MINOR<br>CHILD<br><br>APPELLEES | **Opinion Delivered** January 20, 2016<br><br>APPEAL FROM THE MISSISSIPPI<br>COUNTY CIRCUIT COURT,<br>CHICKASAWBA DISTRICT<br>[NO. JV-14-27]<br><br>HONORABLE RALPH WILSON, JR.,<br>JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Michael Edwards appeals the termination of his parental rights to his daughter A.E. (born July 11, 2012).[1] Appellant argues on appeal that (1) Arkansas Department of Human Services (DHS) and the attorney ad litem failed to demonstrate that termination was in A.E.'s best interest, (2) the evidence was insufficient to establish at least one available ground for termination, and (3) appellant's "due process rights were violated where he was incarcerated and not given an opportunity to participate in the proceeding concerning his child." We affirm.

A call was made to the Arkansas Child Abuse Hotline on February 26, 2014, stating that A.E. had approximately twenty bruises at different stages of healing. Appellant was

---

[1]A.E.'s mother, Michelle Edwards, consented to the termination of her parental rights and is not a part of this appeal.

incarcerated at this time, and A.E. was in the custody of her mother, Michelle Edwards. A.E. was taken for a health-and-safety assessment at Le Bonheur in Memphis, Tennessee, where it was discovered that she had two skull fractures, multiple bruising, and internal injuries. A.E.'s perpetrator was unknown. A seventy-two hour hold was taken on March 1, 2014, due to severe maltreatment and substantial risk of serious harm. DHS subsequently petitioned for emergency custody of A.E., who was approximately nineteen months old at the time. The court entered an ex parte order for emergency custody on March 11, 2014. The court entered a probable-cause order on April 23, 2014, finding that the emergency conditions which necessitated removal still existed and ordering A.E. to remain in the custody of DHS.

On May 5, 2014, Donna Baker, A.E.'s paternal grandmother, filed a petition for guardianship of A.E. Attached to the petition was a handwritten letter signed by both appellant and Michelle on December 28, 2012, granting Baker permission to take temporary custody of A.E. if they were absent and/or unable to care for A.E. DHS and the attorney ad litem filed a joint petition for termination of parental rights on May 19, 2014. The petition stated the following in relation to appellant:

> d. That the father, Michael Edwards, is currently incarcerated in the Morgan County Correctional Facility located in Wartburg, TN. That he is not expected to be released anytime in the near future.
>
> e. That the father has abandoned the child as defined in Arkansas Code Annotated Section 9-27-303.

A continuance order was entered on May 19, 2014, continuing the case for good cause to June 23, 2014. Appellant was appointed counsel in an order filed on June 5, 2014. On that same date, appellant filed an answer to the termination of parental rights petition. In the

answer, he affirmatively pled "lack of service of process and any and all defenses and affirmative defenses set forth under Arkansas Civil Procedure Rules 8 and 12." He also filed a motion for transport order on June 5, 2014, so that he could be present at a hearing set for June 10, 2014. The court denied the motion on June 10, 2014, and the order was filed on June 23, 2014. The adjudication hearing took place on July 2, 2014. A.E. was adjudicated dependent-neglected based on "inadequate supervision and failure to protect due to the extent, nature, seriousness and the location of the injuries on the minor child and extreme physical abuse by Herbert McCaig."[2] The goal of the case was adoption and termination of parental rights. The adjudication order noted the appellant had been served by green card on May 27, 2014.

In the review order filed on October 14, 2014, the court noted that an approved ICPC Placement letter on Baker was entered into evidence. The court granted Baker unsupervised alternating weekend visitation. On December 19, 2014, Paul and Tiffany Strong, A.E.'s foster parents, filed a motion to intervene. They also filed petitions for adoption and guardianship. Baker objected to the motion to intervene on January 12, 2015. DHS sought to have the Strongs' motion and petitions dismissed in responses filed on January 15, 2015. The Strongs filed an amended petition for adoption on March 17, 2015. Baker sought to have the petition dismissed in a response filed on March 24, 2015.

Appellant filed a motion for continuance on March 31, 2015. The motion stated that appellant would be paroled on November 24, 2015, and that there were "no allegations

---

[2]McCaig was Michelle's boyfriend.

against the defendant Michael Edwards except for that he is incarcerated." Attached to the motion was an offender sentence letter, which reflected that appellant began an eight-year sentence on July 7, 2013, and that his release eligibility date was November 24, 2015. The letter also showed that the full expiration date of appellant's sentence was June 29, 2021. Appellant filed a pro se letter with the court on March 31, 2015. He attached a certificate of completion for a Pro-Social Life Skills Program.

The court entered an order granting the Strongs' motion to intervene on April 20, 2015. The order from a placement hearing held on January 30, 2015, was filed on May 18, 2015. In that order, the court acknowledged that Donna and Shad Baker had an approved ICPC home study through the state of Tennessee. The court found that it was in A.E.'s best interest to remain in the home with the Strongs, stating that "there is more stability and continity of care and more structure and routine with Paul and Tiffany Strong. The Strong's [sic] are a more traditional family . . . and they have had physical custody of [A.E.] in excess of nine months." The order further stated:

> 7. There is pending termination of parental rights petitions. The grandparents' rights are derivative of the parents' constitutional and legal rights. If the parents' rights are severed or terminated, then the rights of the grandparents are also severed by law. The court finds it is awkward and not in the child's best interest to be placed with the grandparents prior to the court addressing the termination of parental rights petitions.
>
> 8. [A.E.] should remain with Paul and Tiffany Strong. The placement request of Mr. and Mrs. Baker is hereby denied.
>
> 9. With regard to the visitation previously awarded to Mr. and Mrs. Baker, same is modified herein. Over the objection of the attorney ad litem, the Bakers shall continue to have alternate Saturday visitations. The visitations shall be from 10 a.m. to 4 p.m. pending further orders of the court.

10. Based upon the agreed stipulation of the [Bakers], through counsel, [and] the Court that the Baker's [sic] will submit to a hair follicle test.

The termination hearing took place on April 15, 2015. Appellant was not present for the hearing, although his attorney was present. The court addressed appellant's motion for continuance at the beginning of the hearing. Appellant's attorney asked the court to continue the case "to allow [appellant] to be released and have an opportunity to work the plan." The attorney further stated that the "allegations that brought the child in to Court really has nothing to do with my client, other than the fact that he is incarcerated." The court denied the motion "finding that the Statute requires that the Court consider hearings and the timeliness of the hearings as from the viewpoint of a child rather than from the parent's convenience."

Sylvia Ware, a family service worker supervisor with DHS, testified that she became involved with the case on January 26, 2015. She stated that she had not had any contact with appellant, and that appellant had been incarcerated throughout the duration of the case. She said that she was unaware of any contact with or support of A.E. by appellant. She opined that A.E. was adoptable and that termination was in A.E.'s best interest. She testified that A.E. had been in foster care since coming into DHS's custody. She stated that appellant had not provided anything to DHS in regards to A.E. and that, to her knowledge, he had not provided anything to his parents to give DHS.

Appellant's attorney did not call any witnesses during the termination hearing. At the conclusion of the hearing, the court granted DHS's petition to terminate appellant's parental rights.[3] The termination order was entered on May 26, 2015. It stated in pertinent part:

> The juvenile has lived outside the home of the father for more than twelve (12) months; the father has not visited the minor child and has failed to provide support or contact with the juvenile. Ark Code Ann. § 9–27–341(b)(3)(B)(ii)(*a*).

> The father is currently incarcerated and sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the child's life. Ark. Code Ann. § 9–27–341(b)(3)(B)[viii].

Appellant filed a timely notice of appeal on June 4, 2015. This timely appeal followed.

On appeal, appellant argues that (1) DHS and the attorney ad litem failed to demonstrate that termination was in A.E.'s best interest, (2) the evidence was insufficient to establish at least one available ground for termination, and (3) his due process rights were violated where he was incarcerated and not given an opportunity to participate in the proceeding concerning his child.

We review termination–of–parental–rights cases de novo.[4] At least one statutory ground must exist, in addition to a finding that it is in the child's best interest to terminate parental rights; these must be proved by clear and convincing evidence.[5] The question we must answer on appeal is whether the circuit court's finding that the disputed fact was proved

---

[3]Michelle signed a consent to the termination of her parental rights at the beginning of the hearing.

[4]*Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

[5]Ark. Code Ann. § 9–27–341 (Supp. 2013).

by clear and convincing evidence is clearly erroneous.[6] In determining whether a finding is clearly erroneous, we give due deference to the opportunity of the circuit court to judge the credibility of the witnesses.[7]

Termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents.[8] Parental rights, however, will not be enforced to the detriment or destruction of the health and well-being of the child.[9] The intent behind the termination–of–parental–rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective.[10]

An order terminating parental rights must be based on the court's finding by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration that (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm caused by returning the child to the custody of the parent.[11] However, adoptability and potential harm are merely factors to be considered—they are not elements of the cause of action and need not be establish by clear

---

[6]*Fields v. Ark. Dep't of Human Servs.*, 104 Ark. App. 37, 289 S.W.3d 134 (2008).

[7]*Matlock v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 184, 458 S.W.3d 253.

[8]*Osborne v. Ark. Dep't of Human Servs.*, 98 Ark. App. 129, 252 S.W.3d 138 (2007).

[9]*Id.*

[10]Ark. Code Ann. § 9–27–341(a)(3).

[11]Ark. Code Ann. § 9–27–341(b)(3)(A)(i) & (ii).

and convincing evidence.[12]   Rather, after considering all of the factors, the trial court must find by clear and convincing evidence that termination of parental rights is in the best interest of the children.[13]   The harm referred to in the statute is "potential" harm, the trial court is not required to find that actual harm will result or to affirmatively identify a potential harm.[14] Moreover, evidence on this factor must be viewed in a forward–looking manner and considered in broad terms.[15]   The trial court must also find by clear and convincing evidence the existence of a statutory ground for termination.[16]

In arguing that DHS and the attorney ad litem failed to demonstrate that termination was in A.E.'s best interest, appellant contends that he was not the cause of A.E.'s injuries, that he was not found to be unfit, and that he did not pose any danger to A.E.  DHS concedes these facts.  In addition, appellant argues that A.E. was not dependent–neglected because, prior to his incarceration, he arranged for his mother to take care of A.E. in his absence, and that his mother should have been given preference under Ark. Code Ann. § 9–27–355.  Appellant further argues that termination was not in A.E.'s best interest because it adversely affected A.E.'s relationship with his mother.  DHS contends that appellant's argument concerning his mother being a fit and willing caregiver goes beyond sufficiency and is not preserved because

---

[12]*Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, 471 S.W.3d 251.

[13]*Id.*

[14]*Id.*

[15]*Id.*

[16]Ark. Code Ann. § 9–27–341(b)(3)(B).

it was not raised below. We agree. To the extent that appellant argues that his mother should have been given preference in place of termination of parental rights, appellant failed to appeal from the order setting the goal of the case to termination of parental rights and adoption.[17]

Despite appellant's contention, there was evidence that termination of his parental rights was in A.E.'s best interest. He had been incarcerated throughout the life of the case. There was no evidence that he had any contact with the child during his incarceration. Although he was set to be paroled, according to his attorney, in November, that was seven months after the termination hearing and he still required time to get out and work the plan. Even assuming that appellant would be released when he hoped, he would not be able to immediately reunite with A.E. Viewed from A.E.'s perspective, who was less than three years old, termination of parental rights was in her best interest so that she could achieve permanency and not have to wait in limbo for possible reunification with appellant.[18]

To the extent that appellant argues that termination adversely affected A.E.'s relationship with his mother, there was no evidence of the nature and extent of the relationship A.E. shared with appellant's mother. Although appellant's mother had been granted unsupervised visitation, that visitation had been modified. And at the time of the termination hearing, appellant's mother had not seen A.E. for ten weeks because she thought that she had to submit a negative hair follicle test before continuing visitation. Therefore, this

---

[17] *See Chafin v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 496.

[18] *See Adams v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 263.

case is unlike the situation in *Caldwell v. Ark. Dep't of Human Servs.*,[19] where this court concluded that, because the child remained in the permanent care of her biological mother, termination of her father's parental rights would not achieve permanency, and that preservation of the child's relationship with her paternal grandparents weighed against termination. Here, the parental rights of both of A.E.'s parents were being terminated, and appellant failed to demonstrate a close bond between A.E. and his mother. We are not persuaded by appellant's argument, and we hold that the court did not clearly err when it found that termination of appellant's parental rights was in A.E.'s best interest.

Next, appellant argues that the evidence was insufficient to establish at least one available ground for termination. According to appellant, the termination petition failed to plead either ground employed by the court at the hearing, so both grounds should be excluded. DHS concedes that one ground found by the court for terminating appellant's parental rights was not pled and should not be considered. Although appellant admits that the termination petition had a sentence in it that stated that he was incarcerated and not expected to be released in the near future, he contends that this was not enough to place him on notice that his parental rights were subject to termination based upon the substantial-incarceration ground. In addition, he argues that even if the ground was sufficiently pled to place him on notice, there was no sufficient evidence to support that ground because DHS and the ad litem did not produce any evidence or proof of his sentence. These arguments are without merit.

[19]2010 Ark. App. 102.

Appellant never raised an argument about lack of notice or failure to plead grounds properly below. In fact, his attorney stated that the only evidence against appellant was his incarceration. To the extent that appellant argues that evidence of his sentence had to be placed into evidence by DHS or the ad litem, he is mistaken. Evidence of the length of his sentence was properly before the court in the form of appellant's motion for a continuance. The sentence letter attached to appellant's motion showed that appellant had been sentenced to eight years' imprisonment in July 2013. The court addressed and denied appellant's motion at the beginning of the termination hearing. Termination of parental rights is warranted if the parent is sentenced to a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life.[20] It is the prison sentence itself, not the potential release date, that determines whether this statutory ground is satisfied.[21] Here, appellant was sentenced to eight years' imprisonment. This is a substantial period of time for a child less than three years of age. Accordingly, we affirm this ground for termination.

Finally, appellant argues that his due process rights were violated because he was not given an opportunity to participate in the proceeding concerning his child due to his incarceration. This argument focuses on both the placement hearing and the termination hearing. However, this argument was not raised below and is not properly before us. Appellant contends that he should have been allowed to participate at the termination hearing and that the lack of his presence at that hearing should be a *Wicks* exception.

---

[20]Ark. Code Ann. § 9-27-341(b)(3)(B)(viii).

[21]*Brumley v. Ark. Dep't of Human Servs.*, 2015 Ark. 356.

In *Wicks v. State*,[22] the Arkansas Supreme Court reaffirmed the importance of the contemporaneous-objection rule while outlining a few finite exceptions to the rule. The third exception "relates to the trial court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial."[23] In *Wicks*, the court stated that a reversal on such grounds would be "an extremely rare exception" to the rule.[24] We have interpreted the third *Wicks* exception to mean that "no objection is required to preserve an issue for appeal where the error is so flagrant and egregious that the trial court should, on its own motion, have taken steps to remedy it."[25] Therefore, in this case, we must determine whether appellant's absence from the termination hearing was a flagrant and egregious error requiring the trial court to intervene. Federal courts have found that prison inmates do not have a due-process right to be present at civil hearings.[26] This includes termination proceedings, as long as the inmate-parent is represented by counsel at the hearing, the counsel participates by making evidentiary objections and cross-examining witnesses, and the inmate has the opportunity to present testimony by deposition or other recorded format if that testimony could influence the outcome of the proceedings.[27]

---

[22]270 Ark. 781, 606 S.W.2d 366 (1980).

[23]*Wicks*, 270 Ark. at 786, 606 S.W.2d at 369.

[24]*Id.*, 606 S.W.2d at 369.

[25]*Baker v. Ark. Dep't of Human Servs.*, 2011 Ark. App. 400, at 3.

[26]*See Fruit v. Norris*, 905 F.2d 1147, 1150 n.6 (8th Cir. 1990).

[27]*See Cook v. Boyd*, 881 F. Supp. 171, 175 (E.D. Pa. 1995); *In re Interest of J.S.*, 470 N.W.2d 48, 52 (Iowa Ct. App. 1991).

Here, although appellant was not present, his attorney fully participated during the hearing. There is no indication that appellant's due-process rights could not have been safeguarded in his absence. Therefore, there was no reason for the court to step in on its own motion and raise appellant's due-process argument. Thus, this does not fall within the third *Wicks* exception, and we cannot address it due to lack of preservation.[28]

Additionally, appellant contends that his due-process rights were violated because he was not properly served with notice of the petition for termination of his parental rights. Although appellant raised improper service of process in his answer to the termination petition, he never raised it again. His attorney appeared at the termination hearing on appellant's behalf and participated fully without ever objecting to lack of service. Therefore, any argument concerning service was waived.[29]

Affirmed.

GLADWIN, C.J., and ABRAMSON, J., agree.

*Tabitha B. McNulty*, Arkansas Public Defender Commission, for appellant.

*Mischa K. Martin*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.

---

[28] *See Vogel v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 671, ____ S.W.3d ____.

[29] *See Trelfa v. Simmons First Bank of Jonesboro*, 98 Ark. App. 287, 254 S.W.3d 775 (2007).