Cite as 2019 Ark. App. 413

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-19-449

| | | |
|---|---|---|
| SONYA OWEN | | **Opinion Delivered:** September 25, 2019 |
| | APPELLANT | APPEAL FROM THE UNION COUNTY CIRCUIT COURT [NO. 70JV-18-14] |
| V. | | |
| | | HONORABLE EDWIN KEATON, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | |
| | APPELLEES | AFFIRMED |

## MEREDITH B. SWITZER, Judge

Sonya Owen appeals the termination of her parental rights to her son, JN, born on February 19, 2018. Owen's sole point on appeal is the circuit court erred in not appointing her a guardian ad litem. We affirm.

### I. *Facts*

This case began on February 22, 2018, with a report of suspected neglect based on concerns that Owen was not feeding newborn JN enough and that Owen, who is developmentally delayed, would be unable to care for JN because she is unable to care for herself. During an interview with the investigator, Owen stated that prior to JN's birth, she was living with her boyfriend, Mat Newlin, who is not JN's father and that JN's father was in prison in Colorado. She believed her hygiene was perfect with the exception of her teeth, which she admittedly did not brush every day. She also reported she and Newlin

washed their clothes once a month; she had not been taking her medication for bipolar disorder and attention-deficit disorder (ADD) while she was pregnant; Newlin smoked cigarettes; and she knew how to care for a baby despite her bipolar disorder and ADD.

One of the nurses who cared for Owen after JN's birth expressed concern that Owen was not feeding him enough. When the nurse told Owen that DHS wanted to watch her feed JN, Owen began feeding him and began to bond with him. Owen's case manager stated Owen told her she had used methamphetamine twice during her pregnancy. The case manager also reported Owen has three other children, two of whom lived with their father and one whom she had given up voluntarily; and the nurses were concerned about Owen's hygiene and her ability to care for JN.

JN was released from the hospital on February 23, and DHS placed a 72-hour hold on him based on concern of an immediate danger to JN's health or physical well-being due to Owen's mental capacity and inability to care for him and protect him from harm. An ex parte order for emergency custody was entered on February 28. On March 27, a probable-cause order was entered continuing JN in DHS custody because Owen was unfit to have custody, and JN's health and safety could not be protected if returned to Owen.

DHS filed its first petition to terminate Owen's parental rights on April 2, alleging that Owen had subjected JN to aggravated circumstances. This petition was denied in an order filed on July 12, with the circuit court finding DHS had not proved by clear and convincing evidence Owen had subjected JN to aggravated circumstances or that it was in JN's best interest for her parental rights to be terminated. However, custody of JN was continued with DHS because the return of custody to Owen was contrary to JN's welfare.

2

JN was adjudicated dependent–neglected in an order filed on May 7. Owen was ordered to follow the case plan, obey all court orders, and cooperate with DHS; obtain and maintain stable, clean, and suitable housing and keep all utilities on; obtain and maintain stable employment and otherwise provide adequate income to support JN; complete parenting classes; submit to random drug screens and test negative on all; not use or possess any illegal drug; and attend and participate in counseling.

A review hearing was held on September 17, and an order was filed on October 9 continuing custody of JN with DHS. The order found DHS had made reasonable efforts to provide services to achieve a goal of reunification but found Owen had not complied with the case plan and court orders, and Newlin, with whom Owen was still living, had not cooperated with DHS. Owen was ordered to do all the things previously ordered in the adjudication order. A second review hearing was held on December 17, 2018;[1] the circuit court again found DHS had made reasonable efforts to provide services to achieve reunification, but Owen was still not compliant with the case plan or court orders.

DHS filed a second petition to terminate Owen's parental rights on January 9, 2019, alleging two grounds: (1) other factors or issues arose subsequent to the filing of the original petition for dependency-neglect that demonstrated placement of JN in Owen's custody was contrary to his health, safety, or welfare and that, despite the offer of appropriate family services, Owen had manifested the incapacity or indifference to remedy the subsequent issues or factors or to rehabilitate the circumstances preventing placement of JN in Owen's custody (Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)* (Supp. 2017)); and (2) JN was

_____

[1]This order was not filed until January 22, 2019.

subjected to aggravated circumstances (Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)*). After a February 8, 2019 hearing, the circuit court terminated Owen's parental rights to JN in an order filed March 12, finding Owen had subjected JN to aggravated circumstances and it was in his best interest for Owen's parental rights to be terminated. Specifically, the circuit court found the following: the case had never progressed to a point where DHS felt comfortable with allowing Owen to care for JN due to her level of functioning; while Owen had completed parenting classes, it did not change or affect her ability to care even for herself; Owen was unable to maintain a proper home or manage her money in a responsible manner; and she made poor decisions. The circuit court stated it was not sure what additional services could be offered to impact Owen's intellectual functioning.

At the termination hearing, JN's caseworker testified JN had never been returned to Owen's care during the pendency of this case; Owen had tested positive for methamphetamine and amphetamines once in June 2018; she was unable to provide adequate information on her drug and alcohol usage for a drug assessment; and she had difficulty managing her money, paying for things such as video games, and then not having money to buy medication and her glasses. Owen's current living situation was a one-bedroom, one-bath home, with Owen and Newlin using the living room as both their bedroom and a kitchen. It was the caseworker's opinion that Owen could not provide a suitable home for JN; she had not proved she could provide the necessary supervision to protect JN from harm; she was unable to meet JN's needs for food, clothing, shelter, medical or mental-health; and her emotional stability, especially due to her low level of intellectual functioning, seriously impeded her ability to care for JN. The caseworker testified that the

4

examiner who performed Owen's psychological exam concluded Owen is unable to care for JN.

On cross-examination, the caseworker agreed that JN had never lived with Owen and that Owen is disabled under the Americans with Disabilities Act (ADA). When asked what reasonable accommodations had been made for Owen under the ADA, the caseworker explained Owen was given one-on-one parenting classes and supervised visitation which, in her opinion, were the only services that could be offered to Owen.

Owen's program administrator (PA) testified she had been Owen's PA for over a year and had provided assistance to Owen to make sure she knew the importance of keeping a safe home, good body hygiene, proper care for an infant, and budgeting so that she was able to purchase necessary items such as medication, glasses, and food. The PA also provided one-on-one parenting classes for Owen because it took Owen longer to understand the material, but Owen lacked the ability to demonstrate during visits that she could care for JN. The PA noted that at one point, Owen had allowed a man who had been living in a tent to move in with her and Newlin and that Owen had recently begun smoking.

The adoption specialist testified JN is adoptable. She stated JN's current placement would like to adopt him if the opportunity arose.

In closing, Owen's counsel argued that while DHS had made accommodations for Owen in her parenting classes, DHS had done nothing else to accommodate Owen's disabilities because, other than making a DDS referral, DHS did not offer Owen any other services. Owen's counsel asked rhetorically what other services could be offered so that Owen could have meaningful access to reunification with JN; the attorney ad litem asserted

5

Owen's counsel was unable to name additional services DHS should have provided because all services had been provided to Owen.

In finding aggravated circumstances as the ground for termination, the circuit court noted Owen struggled to care for herself, much less JN; she made poor choices; and most of all, Owen's level of functioning interfered with her ability to provide for JN's needs. The circuit court stated it was not sure what other services DHS could have offered to affect Owen's intellectual functioning, and it did not see Owen's abilities rising to a level that would allow her to care for JN.

## II. *Standard of Review*

We review termination-of-parental-rights cases de novo, but we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Gonzalez v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 425, 555 S.W.3d 915. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.*

## III. *Argument*

Owen makes no argument on appeal regarding the ground relied on by the circuit court for termination, nor does she argue that termination was not in JN's best interest. Therefore, it is unnecessary to address the sufficiency of the evidence to support the termination, as Owen has abandoned any sufficiency argument on appeal.

Owen's sole point on appeal is that the circuit court erred in not appointing a guardian ad litem for her, even though it was fully aware of her mental deficiencies and developmental delays. This argument was not made to the circuit court. Normally, even

6

in termination cases, arguments raised for the first time on appeal will not be addressed. *Sills v. Ark. Dep't of Human Servs.*, 2018 Ark. App. 9, 538 S.W.3d 249. While Owen admits she failed to raise this issue below, she claims this issue qualifies as a *Wicks* exception to the rule that a contemporaneous objection is required to preserve an issue for appeal. *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). Specifically, Owen contends that the third *Wicks* exception is applicable, which has been interpreted to mean that "no objection is required to preserve an issue for appeal where the error is so flagrant and egregious that the trial court should, on its own motion, have taken steps to remedy it." *Edwards v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 37, at 12, 480 S.W.3d 215, 222 (quoting *Wicks*, 270 Ark. at 786, 606 S.W.2d at 369). *Wicks* exceptions are extremely rare. *Welvaert v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 513, 530 S.W.3d 382.

In support of her contention, Owen cites *Baker v. Arkansas Department of Human Services*, 2011 Ark. App. 400. *Baker* is distinguishable, as discussed in *Pratt v. Arkansas Department of Human Services*, 2012 Ark. App. 399, 413 S.W.3d 261, in which this court clarified the discussion of *Wicks* in the *Baker* case by holding, "[T]he *Wicks* discussion in *Baker* arose from an earlier no-merit setting and stands only for the proposition that it may not be frivolous to argue that the *Wicks* exception to the contemporaneous-objection rule might apply in a termination case where an issue was not preserved." 2012 Ark. App. at 13, 413 S.W.3d at 267.

We disagree that these facts qualify as a *Wicks* exception. Owen was represented by counsel, who questioned DHS employees and argued vociferously regarding the services and accommodations, or lack thereof, provided to Owen as a result of her disabilities to

7

allow her to seek reunification with JN.  Our supreme court has never applied a *Wicks* exception in a DHS termination case when the parent is represented by counsel.  *Weathers v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 142, 433 S.W.3d 271.

We note that Owen's argument would fail even if it had been preserved.  While an element of the subsequent-factors ground requires DHS to comply with the ADA, *see* Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(b)*, there is no such corresponding requirement in the aggravated-circumstances ground, *see* Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)*.

Affirmed.

VIRDEN and VAUGHT, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.