Cite as 2023 Ark. App. 33

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-22-403

| | | |
|---|---|---|
| MOESHA LAWSON | | Opinion Delivered February 1, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE ST. FRANCIS COUNTY CIRCUIT COURT [NO. 62JV-20-20] |
| V. | | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | HONORABLE KATHIE HESS, JUDGE |
| | APPELLEES | AFFIRMED |

**WENDY SCHOLTENS WOOD, Judge**

Moesha Lawson appeals the St. Francis County Circuit Court's order terminating her parental rights to her minor child (MC). She does not challenge the circuit court's findings that grounds support termination and that termination is in her child's best interest. She argues that her due-process rights were violated because the termination hearing was held without her and because the circuit court did not inquire about her absence. She also contends that while counsel attended the hearing on her behalf, his representation was "perfunctory." Because these arguments are not preserved for appeal, we affirm.

On April 8, 2020, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect after taking a seventy-two-hour hold on MC, who was born on March 23, 2020. According to the affidavit attached to the

petition, MC was born with a medical condition that required the placement of a shunt in his brain to remove excess fluid, and he requires extensive follow-up treatment and therapy. The affidavit further states that Lawson suffers from mental-health and developmental issues, and hospital staff had reported specific concerns about her ability to care for MC's basic needs as a newborn and his special medical needs. The affidavit also states that Lawson had another child removed from her care after she had threatened harm to the child, and Lawson did not regain custody of the child due to her failure to follow her established case plan. In light of these facts, DHS sought emergency custody of MC and a dependency-neglect determination, contending that he was at risk of substantial harm due to inadequate supervision.[1]

On April 15, the circuit court entered an ex parte order awarding DHS emergency custody of MC and appointing Kimberly Eden as Lawson's attorney. At the probable-cause hearing, Lawson was represented by her attorney, but Lawson did not personally appear. A DHS caseworker had attempted to provide Lawson transportation to the hearing but discovered that Lawson had checked into a mental-health facility. The court found probable cause for MC's removal and for continued care by DHS. The court further ordered Lawson to complete parenting classes, watch a video titled "The Clock is Ticking," and complete a psychological evaluation and follow resulting recommendations.

---

[1]The petition also named a putative father, who was later dismissed from the case after paternity testing confirmed he is not MC's biological father.

At the adjudication hearing in May, Lawson was represented by her attorney but did not personally appear. The caseworker testified that Lawson was in another mental-health facility. In the May 5 adjudication order, the court found that all parties had received proper service and notice of the hearing under the applicable rules of procedure. The circuit court adjudicated MC dependent-neglected and approved DHS's case plan, with the goal being reunification of the family. The court ordered that visitation be supervised and that Lawson undergo a psychological evaluation and mental-health counseling.

Over the next year, DHS continued to provide Lawson with reunification services, including foster care, visitation, and counseling. During that time, the circuit court held two review hearings via videoconference (Zoom): one on July 14, and another on October 27. Lawson was represented by counsel at both, but Lawson attended only one. In its review orders, the court found that DHS had made reasonable efforts to provide family services aimed at reunification, but Lawson remained unfit and should continue to be offered services. Reunification remained the goal of the case.

On January 6, 2021, DHS moved to terminate its obligation to provide reunification services and gave notice that a permanency-planning hearing would immediately follow the hearing on its motion. The motion alleged that Lawson was suffering from psychiatric issues, she had recently attempted suicide, she had not been taking advantage of scheduled visitation with MC, and MC continued to have serious medical conditions that require specialized care that Lawson could not manage.

The circuit court held a hearing on the motion to terminate services and for permanency planning on April 27. The hearing was held on Zoom, and Lawson appeared with her attorney. After the hearing, the court entered an order on May 18 finding by clear and convincing evidence that reunification services should be terminated because MC had been subjected to aggravated circumstances, i.e., there was little likelihood that services to the family would result in successful reunification. The court further found that DHS had offered Lawson services, including foster care, transportation, parenting classes, visitation, and referrals for mental-health counseling; Lawson had not participated in visitation with MC on a consistent basis and preferred that the DHS caseworker send her photos of MC; she continued to suffer from mental-health issues and had recently attempted suicide by overdosing on prescription sleeping pills; she was not attending court-ordered mental-health counseling on a consistent basis; she could not tell the court what medication she was to take; and she could not adequately care for her medically fragile child. The circuit court also concluded that returning MC to Lawson's custody was contrary to his best interest, and it set adoption as the case goal.

On November 17, DHS filed a petition to terminate Lawson's parental rights alleging three grounds: (1) failure to remedy, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2021); (2) subsequent factors, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)*; and (3) aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(B)*. The petition gave notice that the termination hearing would be held on February 8, 2022. The record reflects that, on that date, the termination hearing was continued, and a review hearing was held. The court's

4

February 11 review order found that Lawson appeared at the courthouse on February 8 and was personally served with the termination petition by the St. Francis County Sheriff. The order further found that Lawson was asked "to remain and come into Court for her [review] hearing," where her attorney[2] was present, "but [Lawson] left the Courthouse."

The termination hearing was held in person on March 29; however, Lawson's counsel[3] attended via Zoom. Lawson's case was called in the courthouse hallway twice, but she did not appear. The court proceeded with the hearing in her absence, without objection by her attorney and without any independent inquiry about her absence.

At the hearing, DHS called two witnesses: DHS caseworker Nichole Hopkins and MC's foster parent, Hannah Phillips. Hopkins testified that MC would be in danger if he were returned to Lawson because she had not complied with any of the mental-health requirements of her case plan, including counseling and taking her medication as prescribed; she had not attended parenting classes; and she did not maintain stable housing. Hopkins further testified that MC's medical condition had improved but that he still had medical and therapeutic needs that she believed Lawson could not attend to even if she had been compliant with the orders and her case plan. Phillips testified about MC's medical and developmental progress and his need for continued treatment. She further testified that she and her husband were prepared to ensure that MC receive continued treatment and desired to provide a permanent home for him.

---

[2]Zach Morrison represented Lawson at this review hearing.
[3]Grant Wise represented Lawson at the termination hearing.

Lawson's counsel did not cross-examine Hopkins or Phillips and did not call any witnesses in defense of the termination petition. In closing argument, the only thing he said was, "[B]ecause my client does not appear today, I can't put on a defense for her[;] however[,] in order to preserve the issue for appeal, I will object to her parental rights being terminated."

At the conclusion of the hearing, the circuit court orally granted the petition to terminate Lawson's parental rights, finding that evidence supported the failure-to-remedy and aggravated-circumstances grounds and that termination is in MC's best interest. The court entered the termination order on March 31, and this appeal followed.

On appeal, Lawson argues she was deprived of fair procedure because the court allowed the termination hearing to proceed without an explanation for her absence. She also asserts that her attorney did not "defend" her at the hearing because he did not cross-examine the two witnesses who testified and did not present evidence or argument on her behalf.

As Lawson concedes, her attorney failed to raise these arguments below. Generally, the failure to make a contemporaneous objection or to obtain a ruling on one is fatal to this court's consideration of the issue on appeal. *Holder v. Ark. Dep't of Hum. Servs.*, 2016 Ark. App. 424, at 4, 501 S.W.3d 845, 846. Lawson responds that the alleged errors at trial were so serious and flagrant that the circuit court had a duty to intervene without a request or contemporaneous objection from her counsel. For this proposition, Lawson relies on the third contemporaneous-objection exception discussed in *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

*Wicks* observed that there is a "mere possibility" of an exception to the contemporaneous-objection rule related "to the trial court's duty to intervene, without an objection, and correct a serious error either by an admonition to the jury or by ordering a mistrial." *Id.* at 786, 606 S.W.2d at 369. Since the decision in *Wicks*, however, our supreme court has said that the third *Wicks* exception "is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the presumption of innocence, and the State's burden of proof." *White v. State*, 2012 Ark. 221, at 10, 408 S.W.3d 720, 726. The question of whether this exception extends to due-process and ineffective-assistance-of-counsel arguments in a termination case has not been squarely decided.

We are mindful that this court discussed its opinion requiring rebriefing in a no-merit termination appeal on the basis that the appellant's counsel in that case might have had a nonfrivolous argument to advance concerning the applicability of the third *Wicks* exception to an unpreserved Americans with Disabilities Act claim within a dependency-neglect case. *Baker v. Ark. Dep't of Hum. Servs.*, 2011 Ark. App. 400, at 3. This court reasoned that the similarities between criminal and termination proceedings might render nonfrivolous an argument for extending *Wicks* to termination cases even if the appeal is ultimately unmeritorious. *Id.* The appellant in that case, however, did not advance the *Wicks* argument on rebriefing, so this court had no occasion to decide whether the third *Wicks* exception applies in the context of termination-of-parental-rights appeals. *Id.*

Lawson points out that since *Baker*, application of the third *Wicks* exception has been presented in at least three termination-of-parental-rights cases: *Owen v. Arkansas Department of Human Services*, 2019 Ark. App. 413, 587 S.W.3d 586; *Edwards v. Arkansas Department of Human Services*, 2016 Ark. App. 37, 480 S.W.3d 215; and *Weathers v. Arkansas Department of Human Services*, 2014 Ark. App. 142, 433 S.W.3d 271. She contends that this court did not apply the *Wicks* exception in these cases because the attorneys for the parents actively participated in the parents' defense. She argues that, in contrast, *Wicks* should apply here because her counsel did not actively participate in her defense.

While there are no Arkansas cases directly on point, two give us guidance. In *Edwards*, 2016 Ark. App. 37, at 13, 480 S.W.3d at 222, this court held that the third *Wicks* exception did not apply to preserve Edwards's argument on appeal that his due-process rights were violated when his termination-of-parental-rights hearing was held in his absence. This court held that Edwards's attorney fully participated in the hearing, and there was no indication that Edwards's due-process rights could not be safeguarded in his absence; therefore, there was no reason for the circuit court to step in on its own motion and raise Edwards's due-process argument. *Id.*

In *Vogel v. Arkansas Department of Human Services*, Vogel, who was incarcerated at the time of her termination hearing, argued on appeal that her counsel's failure to take any steps to seek her presence or participation at the hearing violated her due-process right to be heard. 2015 Ark. App. 671, at 7, 476 S.W.3d 825, 829. Vogel acknowledged that this argument was not raised below but contended that the ineffective assistance of counsel was so flagrant

8

and egregious that it fell within the third exception to the preservation rule outlined in *Wicks*. *Id.* This court disagreed and affirmed the termination order, holding that Vogel's counsel had presented her case effectively and that, considering the record of the termination hearing, it was very likely that Vogel's attendance (or previously recorded statements) would not have influenced the outcome of the case given her troubled history and inability to care for her child. *Id.* at 10–11, 476 S.W.3d at 831.

Like the parents in *Edwards* and *Vogel*, Lawson was not in attendance at the termination hearing and argues that her due-process right to be heard was violated sufficiently to warrant the application of the third *Wicks* exception. While Lawson's attorney attended the termination hearing, he did not put on a case or examine any witnesses. The question is whether Lawson's absence at the hearing coupled with her counsel's failure to put on a case or examine witnesses were errors so egregious and flagrant that the circuit court should have intervened on its own motion, thereby triggering the application of the third *Wicks* exception. Under the facts of this case, we hold that they are not.

The record reflects that Lawson was personally served with the petition to terminate her parental rights, and she does not contend that she did not receive notice of her opportunity to be heard. Her brief offers no explanation for her failure to attend the hearing, although she does posit that no one inquired into the possibility that she may have been unable to access or navigate Zoom due to her developmental or mental-health issues and the cessation of reunification services. However, the termination hearing was held in person and on Zoom, and the record reflects that, despite her mental-health and developmental issues,

9

Lawson had attended previous hearings, both in person and on Zoom, after reunification services had been extinguished. The caseworker testified that Lawson did not contact her about transportation to the hearing and did not appear at the DHS office on the morning of the hearing, where she had attended previous hearings on Zoom. Further, the court had no reason to be surprised by Lawson's absence not only because her counsel expressed no concern about it but also because of her history of nonattendance. Lawson failed to appear at the probable-cause hearing and the adjudication hearing because she had checked into mental-health facilities. She failed to appear at two review hearings. Further, she appeared at the courthouse on the date the termination hearing was originally scheduled to be held; however, after she was served with the termination petition and asked to remain for the hearing, she left.

We further note that Lawson does not contest the circuit court's findings that termination of her parental rights is in her child's best interest and that grounds support termination.[4] Significantly, the record contains overwhelming evidence to support these findings. It is undisputed that Lawson suffers from serious mental and cognitive issues that render her unable to care for herself and her child. She previously lost custody of MC's sibling after Lawson threatened to boil the baby. Further, MC requires ongoing, significant medical care, and over the span of two years, Lawson made little to no effort to comply with

---

[4]Failure to challenge the circuit court's grounds and best-interest findings on appeal constitutes an abandonment of those issues. *Isbell v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 110, at 10–11, 573 S.W.3d 19, 26.

the court orders and the case plan that were designed to help her achieve reunification with him. She failed to meaningfully participate in mental-health counseling and to take her medication as prescribed. She failed to attend parenting classes and did not engage in consistent visitation with MC, preferring photos to visitation, and she cannot provide stability in the home. Last, the above evidence shows that there is a risk of harm to MC if he is returned to Lawson's custody, and there is undisputed evidence that MC is adoptable.[5]

Lawson argues that her counsel could have argued that termination was not necessary because guardianship was available as a less restrictive option given that MC's foster parents had applied for guardianship. However, Phillips indicated that her and her husband's motivation for petitioning for guardianship sprang from concerns that MC would not receive proper care if he were taken out of state by the putative grandparents, who were pursuing a competing guardianship of MC at the time. As indicated earlier, the putative father was dismissed after DNA testing.

Unquestionably, the court or counsel could have made a record concerning Lawson's absence at the termination hearing, and her attorney could have examined the witnesses or argued the case. However, Lawson's unexplained absence and her counsel's failure to put on a case were not indicative of flagrant and egregious errors that required the circuit court to intervene under *Wicks*. On the record before us, there is no reasonable probability that

---

[5]The adoption report introduced at the termination hearing reflects that the Phillipses were interested in adoption, and Phillips testified that she and her husband desire to give MC a permanent home.

Lawson's attendance and further representation of her at the termination hearing would have altered the outcome. Accordingly, we affirm.

Affirmed.

GRUBER and HIXSON, JJ., agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Callie Corbyn*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.