Dustin TUCK *v.* ARKANSAS DEPARTMENT of HUMAN SERVICES

CA 08-582                                                288 S.W.3d 665

Court of Appeals of Arkansas
Opinion delivered October 8, 2008

[Rehearing denied November 12, 2008.]

*Booth Law Firm, PLC,* by: *Frank Booth,* for appellant.

*Gray Allen Turner,* Office of Chief Counsel, for appellee.

WENDELL L. GRIFFEN, Judge. Dustin Tuck appeals from an order terminating his parental rights in his daughter, AC. He argues that he was denied assistance of counsel; that the Arkansas Department of Human Services (DHS) failed to join him as a party until it moved to terminate his parental rights; and that the evidence was insufficient to warrant termination. We agree with appellant that DHS should have included him in the case earlier in the proceedings. We therefore reverse and remand the termination order.

AC was born on September 7, 2003, to a single, sixteen-year-old mother. The father, appellant Dustin Tuck, was married to another woman when the child was born. On April 27, 2005, the Crawford County Sheriff took the mother and AC into custody, based on the mother's status as a runaway and as a juvenile in an existing dependency-neglect case. DHS petitioned for emergency custody of AC, which the circuit court granted. The petition and custody order listed AC's father as unknown.

On or about June 1, 2005, DHS prepared a case plan that established services for the mother and child. The last page of the plan listed appellant as AC's father. However, the ensuing probable-cause and adjudication orders did not name appellant as a party; nor is there evidence that DHS notified appellant of the hearings. The court adjudicated AC as a dependent juvenile, due to her mother being under eighteen and in DHS custody, and both were placed in foster care together. Thereafter, the court's orders, including a May 2006 permanency-planning order, continued this living arrangement while still listing AC's father as unknown.

In November 2006, a DHS report declared that appellant had visited the agency's office about a year earlier, in October 2005, claiming that he was AC's biological father. Other DHS documents from late 2006 state that, in December of that year, appellant attended a DHS staffing, expressed an interest in visiting AC, and received background-information forms. The mother even identified appellant as AC's father during her interactions with a CASA volunteer. A subsequent DHS report, dated January 2007, recognized appellant as AC's putative father. There is nothing in the record that suggests that paternity was disputed at any time. However, DHS still did not make appellant a party to the case. Consequently, he was not provided with services or named a defendant in any review and planning orders entered from mid 2005 to early 2007.

On April 9, 2007, DHS filed its termination-of-parental-rights petition. For the first time, appellant's name was listed in the

caption, describing him as the putative father of AC. DHS alleged that appellant's parental rights should be terminated because he failed to establish paternity; failed to visit or provide support for AC; failed to maintain contact with DHS; failed to maintain stable housing and employment; and, inexplicably, failed to comply with case-plan goals or court orders to which he was not a party. Appellant was served with the petition and filed a hand-written response denying its allegations.

The court scheduled a termination hearing for June 2007, but continued it twice so appellant could hire an attorney. Once appellant did so, his attorney immediately filed a motion for a paternity test. Appellant took the test in November 2007, and the court set a termination hearing for January 2008. Appellant objected, arguing that he was never advised of any case-plan goals and that a case plan should be established for him prior to a termination hearing. The trial court declined to continue the hearing, and it proceeded as scheduled once appellant's paternity of AC was established.

At the hearing, the trial court considered the testimony of several witnesses, then terminated appellant's parental rights in AC.[1] Ordinarily at this point, we would recount the evidence regarding appellant's fitness as a parent. However, we need not do so because reversible error occurred at the outset of this case.

We have said it so frequently that it is now axiomatic: few consequences of judicial action are so grave as the severance of natural family ties. See Osborne v. Ark. Dep't of Human Servs., 98 Ark. App. 129, 252 S.W.3d 138 (2007). As long as there is reason to believe that positive, nurturing parent-child relationships exist, the law favors preservation, not severance, of natural familial bonds. See Santosky v. Kramer, 455 U.S. 745 (1982); Benedict v. Ark. Dep't of Human Servs., 96 Ark. App. 395, 242 S.W.3d 305 (2006). Once a child has been adjudicated dependent-neglected, there is a presumption that DHS will provide services to preserve and strengthen the family unit. Benedict, supra. A parent's right to the care and control of his or her child is a fundamental liberty, and termination of parental rights is an extreme remedy in derogation of those rights. See Jones v. Ark. Dep't of Human Servs., 361 Ark. 164, 205 S.W.3d 778 (2005). This fundamental liberty interest does not

---

[1] The court had already terminated the mother's parental rights. She is not a party to this appeal.

evaporate simply because the mother and father have not been model parents. *See Osborne, supra.* Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life. *Id.* If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting State intervention into ongoing family affairs. *Id.*

Accordingly, when the State moves to destroy weakened familial bonds, it must provide parents with fundamentally fair procedures. *See id.* Our Juvenile Code requires a dependency-neglect petition to set forth the names of the juvenile's parents and putative parents and designate them as defendants. Ark. Code Ann. §§ 9-27-311(a)(2), (a)(6), and (c) (Repl. 2008). It also provides that all adult defendants shall be served with a copy of the petition and either a hearing notice or an order to appear, as provided in the Arkansas Rules of Civil Procedure. Ark. Code Ann. § 9-27-312 (Repl. 2008). These elemental protections serve to identify the juvenile and his parents, place them within the system, and facilitate the provision of services in hopes of preserving the family.

■ Here, for reasons we cannot fathom, DHS did not make appellant a defendant for almost two years despite knowing of his putative fatherhood. And, to compound this grievous error, appellant's parental rights were terminated without his ever being the subject of a case plan or receiving family services. Clearly, the dictates of sections 9-27-311 and 9-27-312 were not met, nor were basic due-process guarantees. *See Jorden v. Ark. Dep't of Human Servs.*, 73 Ark. App. 1, 38 S.W.3d 914 (2001) (holding that a putative father has standing to participate in a dependency-neglect proceeding by virtue of being a defendant under Ark. Code Ann. § 9-12-311(c)).

■ The agency and the ad litem attorney concede that appellant should have been made a party earlier in the case. However, they argue that the failure to do so was harmless error. We disagree. We can envision few things as harmful as a parent or putative parent's being excluded from a dependency-neglect proceeding until the moment the State seeks to terminate his parental rights. As we stated in *Jorden, supra*:

> [W]e cannot presume that the results of any of the issues will be the same once [the putative father] is allowed to participate in the

proceedings on remand. Therefore, our conclusion that the trial court erred in finding that [the putative father] had no standing is determinative of all the issues raised on appeal, requiring that we reverse and remand on all of them.

73 Ark. App. at 3, 38 S.W.3d at 915-16. Likewise, in the present case, we cannot presume that the outcome will be the same once appellant is allowed to participate as a party-defendant and receive services prior to termination.

■ DHS and the ad litem attorney also argue that appellant should have intervened in the case and that his non-participation was due to his own lack of diligence or enthusiasm. That argument must be addressed. As previously mentioned in this opinion, Arkansas law is explicit about the duty of the Department of Human Services to provide services to families when instances of dependency and neglect arise. That duty is not triggered by requests by parents. It does not arise because parents are diligent or enthusiastic. The duty to notify a parent or putative parent about a dependency-neglect proceeding exists to satisfy fundamental fairness. Put bluntly, it is fundamentally unfair for a parent or putative parent to be denied legal participation in a proceeding that involves his child. The only thing more unfair would be to terminate parental rights without such notice and opportunity to participate, as occurred in this case.

■ Remarkably, DHS also argues that appellant was required to prove paternity before he could participate in the case involving AC. That argument is directly refuted by the plain language of Ark. Code Ann. § 9-12-311, which requires that parents *and* putative parents be named as defendants and afforded legal notice in dependency-neglect proceedings.

Finally, the disturbing history of this case, where DHS sought to terminate the parental rights of a putative father after denying him an opportunity to participate in dependency-neglect proceedings and offering no services to him for almost two years, prompts yet another disquieting concern. It is troubling enough whenever a child has been neglected by a parent. Here, the governmental agency responsible for helping stabilize the family by providing support services to the child and parent refused to even involve appellant until it sought to terminate his parental rights, and never included appellant in any plan concerning his

daughter's care. We expect that the refusal by DHS to perform its duties and the manifestly invalid reasons for that non-performance will be rectified on remand.

Reversed and remanded.

HART and HUNT, JJ., agree.