SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-304

| | |
|---|---|
| | **Opinion Delivered** September 17, 2014 |
| TYRONE MOSES, SR. | |
| APPELLANT | APPEAL FROM THE CONWAY COUNTY CIRCUIT COURT [NO. JV-2013-6] |
| V. | |
| | HONORABLE TERRY SULLIVAN, JUDGE |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND T.M. and A.M., MINORS | |
| APPELLEES | AFFIRMED |

## BRANDON J. HARRISON, Judge

Tyrone Moses, Sr., appeals a Conway County Circuit Court order terminating his parental rights to his children T.M. and A.M. The children's mother, Kiara Walker's, parental rights were also terminated, but she is not a party to this appeal. We affirm the court's termination of Moses's rights.

### I. *Background*

The Arkansas Department of Human Services (DHS) removed T.M., age one year, and A.M., age three months, from their mother's custody in February 2013 after emergency-room x-rays at Arkansas Children's Hospital revealed that both children had multiple unexplained bone fractures. The circuit court adjudicated the children dependent-neglected in March 2013 after finding that T.M. had approximately thirty-six current or healing fractures and that A.M. had several broken ribs. The court found that the children were with their mother, or her boyfriend-now-husband Jamarcus Gage,

when the injuries occurred and that Walker gave no plausible explanation for the children's serious injuries. The court terminated Walker's parental rights in January 2014 based on the children's best interest and several statutory grounds, including aggravated circumstances, because the children had experienced extreme cruelty under her watch.

Tyrone Moses, Sr., is the children's father. He was not involved with any of the child-abuse allegations because he was in prison when the injuries occurred. The circuit court nonetheless terminated Moses's parental rights on three statutory grounds, although DHS only alleged one of the grounds in its petition—namely, that Moses had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life. Ark. Code Ann. § 9-27-341(b)(3)(B)(viii) (Supp. 2013) ("incarceration" ground). Moses challenges the "incarceration" statutory ground here. Because DHS never amended its petition, or moved to conform the pleadings to the proof, our review is limited to the incarceration ground. *See Jackson v. Ark. Dep't of Human Servs.*, 2013 Ark. App. 411, 429 S.W.3d 276 (circuit court cannot terminate on statutory grounds not alleged in the petition).

## II. *Discussion*

We review termination-of-parental-rights cases de novo, but we do not reverse unless the circuit court's clear-and-convincing evidence findings are clearly erroneous. *Pratt v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 399, 413 S.W.3d 261 (standard of review).

Moses challenges the circuit court's finding that terminating his parental rights was in the children's best interest. To terminate parental rights, a circuit court must find, by

2

clear and convincing evidence, that doing so is in the best interest of the juvenile, while considering (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Hamman v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 295, 435 S.W.3d 495. There is no requirement that every factor considered be established by clear and convincing evidence; instead, after considering all factors, the evidence must be clear and convincing that termination is in the child's best interest. *Id.*

Here, Moses concedes that his children are adoptable. He only challenges the court's best-interest finding on potential harm. For a number of reasons, Moses says the court lacked sufficient evidence to make the best-interest finding that it did:

- He proactively completed an anger-resolution seminar while in prison and was on a waiting list for parenting classes.

- He testified at the termination hearing that he had interacted "every other week or so" with T.M. before his incarceration.

- He has a relationship with his other two children and they visit him in prison.

- His mother testified that the children would be safe with Moses and that she and Moses's fiancée could care for the children for the remainder of Moses's incarceration.

- Though he was not immediately available to take the children, DHS has a duty to make an effort to place the children with his relatives.

These statements were only part of the record before the circuit court. The court's ultimate decision was based primarily on its determination that "the children would be at risk of harm if returned to Mr. Moses who is currently incarcerated and has a significant history of violence including physical abuse to the mother and a police officer." Moses

3

testified at the hearing that he had hit Walker and an officer on separate occasions and that he was convicted of second-degree battery, third-degree domestic battery, and aggravated assault on a family member, for which he was sentenced to five years in prison and was still imprisoned when the termination hearing occurred. Walker testified how Moses had abused her physically in the past and that Moses had never supported the children financially.

Moses's testimony at the termination hearing also revealed that he had never lived with T.M. or cared for him on his own for any length of time. And Moses had only seen pictures of A.M.; he had never met her. Although Moses planned to live with his fiancée upon his release from prison, he acknowledged that he did not know when he would have a job and that it may be hard for him because of his bad diabetes.

DHS caseworker Cynthia Thompson recommended that the court terminate Moses's parental rights. The gist of her testimony was that Moses was "not in a position where he can provide for the children" in the near future.

We have considered the entire record and hold that the circuit court did not clearly err in finding that termination was in the children's best interest. Among other things, it is not at all certain that, even upon his release, Moses would be approved to take the children. Our juvenile code is intended to protect children from this type of "wait-and-see" instability. *Hamman, supra.*

Having affirmed the circuit court's best-interest determination, we turn to the separate, but closely related, point that Arkansas Code Annotated section 9-27-341(b)(3)(B)(viii) (Supp. 2013) provides for termination when "[t]he parent is sentenced in

a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life[.]" We look at the length of the prison sentence, not the potential release date, when reviewing whether this statutory ground was met. *Bowman v. Ark. Dep't of Human Servs.*, 2012 Ark. App. 477.

The circuit court found that Moses had been incarcerated since September 2012. Moses testified, and DHS submitted documentary evidence, that Moses was sentenced to five years in the Arkansas Department of Correction. The court noted that T.M. was less than one year old and A.M. was less than one month old when Moses went to jail. The court reasoned that by the time of Moses's release from prison, he would have been incarcerated for a substantial period of the juveniles' lives.

Moses makes several factual and legal arguments concerning the incarceration ground here. To boil them down, he argues that DHS "stripped [him] of his identity through unequivocal disregard, both as a party to the case and as a man," that the law favors preservation, not severance, of family bonds, and "the statute is not definitive of what constitutes a substantial period of time in a child's life." Moses claims that, at maximum, five years out of eighteen is not a substantial period of the children's lives.

The incarceration statutory ground does not require DHS to provide services to Moses while he is in prison as a prerequisite to termination or to contemplate what it will do when Moses is released. So the circuit court's seeming lack of consideration of the services DHS should have or could have offered Moses is not reversible error under section 9-27-341(b)(3)(B)(viii).

Regarding the time of incarceration, the circuit court's decision that Moses's incarceration encompassed a substantial period of the children's lives falls within the bounds of our caselaw. At one end of the spectrum are cases like *Thompson v. Arkansas Department of Human Services*, 59 Ark. App. 141, 954 S.W.2d 292 (1997) (forty-year prison sentence, children ages ten and nine) and *Moore v. Arkansas Department of Human Services*, 333 Ark. 288, 291, 969 S.W.2d 186 (1998) (twenty-eight-year prison sentence, child one year old). The other end of the spectrum is *Hill v. Arkansas Department of Human Services*, 2012 Ark. App. 108, 389 S.W.3d 72 (three-year prison sentence, child two years old; court terminated parent's rights and reasoned that by time the parent was released from prison the child would have spent "half of her life" in foster care). In the middle is *Fields v. Arkansas Department of Human Services*, 104 Ark. App. 37, 289 S.W.3d 134 (2008) (ten-year concurrent prison sentences, child age ten months).

We hold that the circuit court did not clearly err by finding that Moses's five-year prison sentence was a substantial portion of T.M.'s and A.M.'s lives.

### III. *Conclusion*

The termination of Moses's parental rights is affirmed.

Affirmed.

WYNNE and GLOVER, JJ., agree.

*Suzanne Ritter Lumpkin*, Arkansas Public Defender Commission, Dependency-Neglect Appellate Division, for appellant.

*Tabitha B. McNulty*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: Keith L. Chrestman, attorney ad litem for minor children.