SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-943

| | |
|---|---|
| | **Opinion Delivered** FEBRUARY 15, 2017 |
| BILLY WOODWARD | |
| APPELLANT | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17JV-15-130] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE MICHAEL MEDLOCK, JUDGE |
| APPELLEES | AFFIRMED; MOTION TO BE RELIEVED GRANTED |

**DAVID M. GLOVER, Judge**

The Crawford County Circuit Court terminated Billy Woodward's parental rights to his son, B.W., born on March 30, 2007.[1] Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(i), his attorney has filed a no-merit brief asserting there are no issues that would support a meritorious appeal and a motion requesting to be relieved as counsel. The clerk of this court sent a certified packet to Woodward notifying him of his right to file pro se points; Woodward has filed no points. We affirm the termination and grant the motion to withdraw.

The Department of Human Services (DHS) filed a petition for emergency custody of B.W. on May 4, 2015, alleging he was dependent-neglected and was currently residing in foster care. In an affidavit attached to the emergency-custody petition, DHS family-service

---

[1]The parental rights of B.W.'s mother, Kendra Woodward, were also terminated; however, she is not a party to this appeal.

worker Carlos Torres provided information that a hotline report had been made April 27, 2015, for medical neglect due to dental issues suffered by B.W.; on April 29, a deputy requested DHS assistance due to the medical neglect and the fact there was no appropriate parent available to take care of B.W., who was residing with a relative and three other people in a trailer with only two beds. B.W. was sleeping on the floor. He was living in the trailer because the relative's house had burned due to a meth-lab explosion. B.W. had forty-two absences from school at that time; when he attended school, he was dirty. The whereabouts of his mother were unknown, and Woodward was incarcerated. DHS took a seventy-two-hour hold on B.W. due to inappropriate living conditions and the lack of an appropriate care giver. An emergency order of custody was filed on May 4; a probable-cause order continuing custody with DHS was filed on May 6. B.W. was adjudicated dependent-neglected in an order filed June 18, 2015, due to Woodward's continued incarceration, the lack of medical attention for B.W., B.W.'s inappropriate living arrangements, and his multiple absences from school.

A review order was entered September 10, 2015, in which the trial court changed the permanency plan to adoption, found Woodward noncompliant with the case plan, and authorized DHS to file a petition for termination of parental rights. DHS filed a termination petition on November 23, 2015, alleging as grounds for termination that Woodward had been sentenced in a criminal proceeding for a period that would constitute a substantial period of B.W.'s life (Ark. Code Ann. § 9-27-341(b)(3)(B)(viii)(Repl. 2015)) and aggravated circumstances (Ark. Code Ann. § 9-27-341(b)(3)(ix)(*a*)(*3*)).



A hearing on the termination petition was held on February 18, 2016. The order terminating parental rights was filed on August 9, 2016; the basis relied upon by the trial court for terminating Woodward's parental rights was the fact that he had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of B.W.'s life. The trial court further found that it was in B.W.'s best interest for parental rights to be terminated, having specifically considered the likelihood B.W. would be adopted and the potential harm in returning him to Woodward. Woodward filed a timely notice of appeal on August 15, 2016. An amended order terminating parental rights was filed on September 12, 2016, to include a finding that the Indian Child Welfare Act was not applicable to this case. Woodward timely filed his notice of appeal with regard to the amended order on September 30, 2016.

### Sufficiency of the Evidence

Termination-of-parental-rights cases are reviewed de novo on appeal. *Spangler v. Arkansas Dep't of Human Servs.*, 2012 Ark. App. 404. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Watson v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 28. DHS must prove by clear and convincing evidence that it is in the juvenile's best interest to terminate parental rights, as well as the existence of at least one statutory ground for termination. *Everett v. Arkansas Dep't of Human Servs.*, 2016 Ark. App. 541, ___ S.W.3d ___. Clear and convincing evidence is that degree of proof that will produce a firm conviction in the finder of fact regarding the allegation sought to be established; the question that must be answered on appeal, when the burden of proving a

disputed fact in equity is by clear and convincing evidence, is whether the trial court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Watson*, *supra.* However, a high degree of deference is given to the trial court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dinkins v. Arkansas Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001).

In determining the best interest of the juvenile, a trial court must take into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. *Myers v. Arkansas Dep't of Human Servs.*, 2011 Ark. 182, 380 S.W.3d 906. Potential harm must be viewed in a forward–looking manner and in broad terms. *Dowdy v. Arkansas Dep't of Human Servs.*, 2009 Ark. App. 180, 314 S.W.3d 722. The trial court is not required to find that actual harm would result or to identify a potential harm. *Lee v. Arkansas Dep't of Human Servs.*, 102 Ark. App. 337, 285 S.W.3d 277 (2008).

As for grounds to terminate parental rights, Woodward has been incarcerated since April 2015, which was one of the reasons B.W. was initially taken into DHS custody. At the termination hearing, DHS introduced a sentencing order from Crawford County, Arkansas, indicating that on July 2, 2015, Woodward was sentenced to ten years in the Arkansas Department of Correction on a negotiated plea of guilty to one count of breaking or entering,

with a suspended imposition of sentence of an additional ten years on a negotiated plea of guilty to a second count of breaking or entering. Woodward argued to the trial court that although he was sentenced to ten years' incarceration, he would most likely be released in about ten months. However, this ground does not permit the court to take into consideration the possibility of early release; rather, this ground for termination is based on whether a parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of time of the juvenile's life. Ark. Code Ann. § 9-27-341(b)(3)(B)(viii). Woodward was sentenced to a ten-year period of incarceration. The question now turns to whether this sentence constitutes a substantial period of B.W.'s life. At the time the termination order was filed, B.W. was nine years old; Woodward's sentence constitutes the remainder of B.W.'s juvenile life. This is a substantial period of B.W.'s life. *See Moses v. Arkansas Dep't of Human Servs.*, 2014 Ark. App. 466, 441 S.W.3d 54 (holding that a five-year sentence was a substantial period of the children's lives when they were less than one year old and less than one month old).

With regard to best interest, there was uncontroverted evidence from the caseworker that B.W. was adoptable, and many people had expressed an interest in adopting him. The fact that Woodward is currently incarcerated makes it impossible for B.W. to be safely returned to his custody and clearly constitutes potential harm to B.W., as Woodward is unable to provide housing or any stability whatsoever.



*Other Adverse Rulings*

Other than the sufficiency of the evidence, there were three rulings during the termination hearing adverse to Woodward. During the hearing, Woodward questioned the caseworker about whether services had been provided to him as set forth in the case plan. The ad litem objected on the basis of relevance to the ground asserted by DHS in the termination petition (parent sentenced in a criminal proceeding for a period of time that would constitute a substantial period of time of the juvenile's life), and the trial court sustained the objection. The trial court's ruling was correct. The incarceration ground does not require DHS to provide services to a parent while he is in prison as a prerequisite to termination or to contemplate what it will do when the parent is released. *Moses*, *supra*. Because DHS did not have to provide services under the ground on which it sought to terminate Woodward's parental rights, whether DHS provided services was not relevant to proving the statutory ground for termination.

After the trial court ruled that it was irrelevant whether DHS provided services to Woodward during his incarceration, Woodward requested the trial court to disregard testimony that had already been elicited about the case plan; the trial court denied this request because Woodward was the one who had elicited the testimony in the first place. *See Beare v. State*, 2010 Ark. App. 544 (objection properly overruled when it was defendant who opened the door to the issue and indicated a willingness to answer questions about the issue). Nevertheless, as discussed above, this evidence had no bearing on the statutory ground under

which DHS sought to terminate Woodward's parental rights or the two-prong best-interest determination.

Lastly, at the termination hearing, there was a question raised by Woodward as to whether ICWA was applicable to his case. However, this issue was resolved after the hearing when the trial court issued an amended order terminating Woodward's parental rights, in which it made a finding that it had received a letter from the Cherokee Nation stating that B.W. was not an Indian child.

After carefully examining the record and the brief presented to us, we hold that counsel has complied with the requirements established by the Arkansas Supreme Court for no-merit appeals in termination cases and conclude that the appeal is wholly without merit. Accordingly, we affirm the order terminating Woodward's parental rights and grant counsel's motion to withdraw.

Affirmed; motion to be relieved granted.

GRUBER, C.J., and KLAPPENBACH, J., agree.

*Leah Lanford*, Ark. Pub. Def. Comm'n, for appellant.

No response.

SLIP OPINION