PHILLIP T. WHITEAKER, Judge
Brett Sills appeals the Craighead County Circuit Court order terminating his parental rights to his son B.S. He argues that there was insufficient evidence to support the grounds for termination and the circuit court's best-interest finding. He also argues that he was denied the most basic elements of due-process when the Arkansas Department of Human Services (DHS) failed to keep him informed of the case progression or to secure his participation in the reunification process. While the due-process arguments raised by Stills gave us pause, we affirm the termination under the facts and arguments as presented to us in this case.
I. Background
Brett Sills and Raylin Cox are the parents of B.S., who was born on February 5, 2016. B.S. tested positive for THC at the time of his birth. DHS removed B.S. from the custody of Cox. Sills was incarcerated at the time on a "probation violation."[1]
At the probable-cause hearing, Sills was present but was not represented by counsel. He was declared the biological and legal father. The court noted that Sills was *252 incarcerated on a "parole violation" and was due to serve a 15-month sentence. Despite the incarceration, the court ordered the standard services (cooperating with the Department; remaining drug free; watching "The Clock is Ticking" video, participating in parenting classes; obtaining and maintaining stable housing and employment, etc.).
At the adjudication hearing, Sills was again present and still unrepresented. The court entered an adjudication order finding that Sills had been served by certified mail. The court also found B.S. to be dependent-neglected due to parental unfitness and the drug use of the mother and that Sills had not contributed to the dependency-neglect of the child. However, the court further found Sills was not a fit parent for purposes of custody and visitation. The court continued its previous orders and specifically ordered Sills to resolve his criminal issues and to complete the case plan and court orders before placement or visitation would be provided.
Subsequent to adjudication, the court conducted two review hearings. Sills was not present at either hearing and was not represented by counsel. After each hearing, the court found that he had not complied with the case plan. The court also held a permanency-planning hearing (PPH). Once again Sills was not present or represented by counsel. After the hearing, the court changed the goal of the case to adoption, and an attorney was then appointed to represent Sills. Once again, the court found that Sills had not participated in the case plan or complied with its orders.
DHS filed a petition to terminate the parental rights of both Cox and Sills.[2] As to Sills, DHS alleged that Sills had abandoned B.S. ( Ark. Code Ann. § 9-27-341(b)(3)(B)(iv) (Supp. 2017)); that there were subsequent other factors ( Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(a) ); and that Sills was sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the child's life ( Ark. Code Ann. § 9-27-341(b)(3)(B)(viii) ). As for the last statutory ground, DHS alleged that Sills had been incarcerated in the Arkansas Department of Correction since February 18, 2016, following the revocation of probation related to a conviction for robbery. DHS further stated that he was not eligible for release until October 2017 at the earliest.
The court conducted a hearing on the petition to terminate Sills's parental rights on May 12, 2017.[3] Sills was present for the first time since adjudication and this time was represented by counsel. When DHS attempted to introduce the prior orders of the court as exhibits, Sills's counsel objected to the introduction of the two review-hearing orders and the PPH order on the following basis: Sills had not been transported to court or allowed to participate by telephone; Sills had not been represented by counsel; and Sills was never sent a copy of the orders entered thereafter. The court admitted the evidence over counsel's objection.
A summary of the evidence and testimony before the court is necessary to understand and address the issues Sills raises on appeal. Sills was the first witness called by DHS. He testified that he had been incarcerated on the day B.S. was born and was not responsible for the child's removal. He *253 continued to be incarcerated in the Arkansas Department of Correction on a probation violation (failure to pay fines), he had been incarcerated for 17 months, but he was set to be released soon. He testified that his expected release date was August 1 but that he fully anticipated to be released mid-June. He stated that he is on parole until January 2021. He testified that once he is released from custody, he intends to live with his mother and work at Anchor Packaging.
Regarding his participation in the dependency-neglect process, he stated that he attended one hearing telephonically and one in person. He bemoaned the fact that he was not appointed an attorney until one year into the case. He stated that DHS knew that he was incarcerated but failed to communicate with him and that he did not know who to contact at DHS. He stated he never received a copy of the case plan and only received a copy of the petition from Cox's attorney. Once he received the petition to terminate, he wrote letters advising DHS that he wanted to come to court and participate in the case. He also indicated that his mother and grandmother were interested in being a placement for the child but that DHS would not give them any information when they called. In fact, he stated that no one from DHS had contacted his family to see if they might be interested as a possible placement for B.S.
As for services, he stated that he had completed anger- and stress-management classes and had completed a class on communication skills and thinking errors. He stated that DHS never sent him a copy of "The Clock is Ticking" video and denied having the ability to watch it on YouTube. He admitted he had never seen the child because of his incarceration, but he insisted that he had not abandoned the child. He complained that DHS never made arrangements to have the child brought to him and that he never wrote to the child because the child is too young to read.
In addition to Sills, the court heard testimony from Precious Hale, a family service worker with Craighead County DCFS, and Jessica Cox, the foster mother. Hale testified concerning the relationship between DHS and Sills. She admitted she had not had any contact with Sills and had never received any telephone calls or emails from him. She did acknowledge receiving a letter from Sills dated March 16, 2017, stating he did not want his parental rights terminated. She stated that she knew Sills was incarcerated, that no services had been provided to him by DHS, and that no attempt had been made to transport the child to visit him. She also admitted that she never sent him a copy of the case plan. She testified that she had no contact with any of Sills's family members regarding placement of the child. In fact, she admitted there was nothing in the CHRIS database about him and that he was not even listed as a client. She further admitted that, based on all this, she was unsure if DHS's petition should be granted.
Despite this uncertainty, Hale stated that the case was approximately 15 months old, and that she believed the child had a right to permanency after that amount of time. She opined that the child could not be safely placed in Sills's home anytime soon, even upon his release. She stated that once he was released, he would have to complete all the standard services and that it could take as long as twelve months or more for him to comply. She testified that B.S. is an adoptable child and that there is nothing in his makeup that would hinder any sort of an adoption. In fact, the foster family had indicated an interest in adopting the child.
Jessica Cox, the foster mother, confirmed that B.S. had been in her custody *254 since shortly after he had been born-15 months. She testified that she was willing to adopt him if he were available for adoption. She stated that she believed the child would be harmed-or in her words "devastated"-if he was taken from her and placed with Sills because the child had bonded with her.
After the termination hearing, the circuit court granted the petition to terminate, concluding that termination was in the child's best interest. The court found only one of the grounds for termination alleged in the petition had been proved: that Sills had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the child's life ( Ark. Code Ann. § 9-27-341(b)(3)(B)(viii) ). Sills now appeals the order of termination.
II. Standard of Review
We review termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. Dade v. Ark. Dep't of Human Servs. , 2016 Ark. App. 443, 503 S.W.3d 96. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. In determining whether a finding is clearly erroneous, we have noted that in matters involving the welfare of young children, we will give great weight to the circuit court's personal observations. Jackson v. Ark. Dep't of Human Servs. , 2016 Ark. App. 440, 503 S.W.3d 122.
The termination of parental rights is an extreme remedy and in derogation of the natural rights of the parents. Fox v. Ark. Dep't of Human Servs. , 2014 Ark. App. 666, 448 S.W.3d 735. As a result, there is a heavy burden placed on the party seeking to terminate the relationship. Id. The termination of parental rights is a two-step process that requires the circuit court to find that the parent is unfit and that termination is in the best interest of the child. T.J. v. Ark. Dep't of Human Servs. , 329 Ark. 243, 947 S.W.2d 761 (1997) ; Smith v. Ark. Dep't of Human Servs. , 2013 Ark. App. 753, 431 S.W.3d 364. The first step requires proof of one or more of the statutory grounds for termination. Ark. Code Ann. § 9-27-341(b)(3)(B). The second step requires consideration of whether the termination of parental rights is in the child's best interest. Ark. Code Ann. § 9-27-341(b)(3)(A).
III. Grounds for Termination
The circuit court terminated Sills's parental rights under the ground that Sills had been sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the child's life ( Ark. Code Ann. § 9-27-341(b)(3)(B)(viii) ). Sills argues that there was insufficient evidence to support the ground for termination because DHS failed to introduce any evidence of his sentence. He contends that the only evidence presented concerning his sentence came from his testimony. Sills takes the position that his testimony proves only that he was incarcerated on a probation violation for nonpayment of fines; was sentenced to 15 months; and was set to be released within the month.[4] He argues that this evidence is insufficient to prove the ground alleged.
Sills is correct that the only evidence concerning his sentence came from his testimony.
*255 DHS did not introduce Sills's sentencing order detailing the length of his sentence at the termination hearing, which is the better practice. However, we have previously held that other evidence of a parent's sentencing is acceptable. See Edwards v. Ark. Dep't of Human Servs. , 2016 Ark. App. 37, at 11, 480 S.W.3d 215, 221 (evidence of length of incarceration found in a continuance motion filed by father). Here, the court had proper evidence of the length of sentence in the form of Sills's own testimony. He testified that he was sentenced to 15 months on a probation revocation. He further testified that his parole was set to end January 1, 2021-in another three and a half years. The evidence further showed that he had been incarcerated at the time of the child's birth and was still incarcerated at the time of the termination hearing-over fifteen months.
A court may terminate parental rights if the parent is sentenced to a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life. It is the prison sentence itself, not the potential release date, that determines whether this statutory ground is satisfied. Here, Sills was sentenced to at least five years' imprisonment (based on his sentence of revocation and his parole end date). We find this is a substantial period of time for a child less than two years of age. See Moses v. Ark. Dep't of Human Servs. , 2014 Ark. App. 466, 441 S.W.3d 54 (holding that a five-year sentence was a substantial period of the children's lives when they were less than one year old and less than one month old).
Sills also argues that the circuit court erred in terminating his rights under this ground because DHS failed to provide services to him and completely ignored him until time for termination in violation of his due-process rights. His arguments fail. The only requirement under this statutory ground is that Sills be sentenced in a criminal proceeding for a period that would constitute a substantial period of B.S.'s life. Ark. Code Ann. § 9-27-341(b)(3)(B)(vii). Under the incarceration ground, DHS does not have to provide services to a parent while he or she is in prison as a prerequisite to termination or to contemplate what it will do when the parent is released. Moses , supra. As a result, whether DHS provided services to Sills is not relevant to proving the statutory ground for termination. See Woodward v. Ark. Dep't of Human Servs. , 2017 Ark. App. 91, at 6, 513 S.W.3d 284, 288. Likewise, DHS's failure to provide services to Sills is also irrelevant for purposes of determining whether there was sufficient evidence to sustain a finding on this statutory ground. The effect, if any, that a violation of his due-process rights would have on the eventual termination is discussed more fully below.
IV. Best Interest Determination
Next, Sills argues that the circuit court erred in finding that it was in the child's best interest to terminate his parental rights. To terminate parental rights, a circuit court must find by clear and convincing evidence that doing so is in the best interest of the juvenile, while considering (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Hamman v. Ark. Dep't of Human Servs. , 2014 Ark. App. 295, 435 S.W.3d 495. The potential-harm inquiry must be viewed in a forward-looking manner and in broad terms; there is no requirement that actual harm would result or that the circuit court identify the potential harm.
*256 Knuckles v. Ark. Dep't of Human Servs. , 2015 Ark. App. 463, 469 S.W.3d 377. There is no requirement that every factor considered be established by clear and convincing evidence; instead, after considering all factors, the evidence must be clear and convincing that termination is in the child's best interest. Hamman , supra.
Here, Sills concedes that B.S. is adoptable; he challenges only the court's finding of potential harm. He claims that the only evidence of potential harm presented at the hearing was his inability to assume custody because of his incarceration. He notes that there was no evidence that he had ever harmed the child and that there was evidence that his relatives were willing to care for the child until he was released. He also notes that the caseworker was unable to estimate how long it would take for Sills to prove that he was able to reunify with the child.
However, the court had evidence that B.S. had already been in DHS's custody his entire life and would be required to linger in DHS custody until Sills is released from jail or perhaps longer to allow Sills the opportunity to prove that he has a stable home and stable employment. We have held that "this kind of wait-and-see is the definition of the instability that the termination statute is intended to protect children from." See Hamman , 2014 Ark. App. 295, at 11, 435 S.W.3d at 502. Thus, there was no error in the circuit court's finding that it was in the child's best interest to terminate Sills's parental rights.
V. Due Process
Finally, Sills argues that it was error for the circuit court to proceed with the termination petition because DHS completely abrogated its duty to provide him with copies of the case plan that he was ordered to follow, the court orders, or any of the pleadings in the case. In fact, he argues, DHS failed to permit him to have any meaningful participation in the case, thereby depriving him of due process.
As stated earlier, this argument gave us pause because DHS did almost nothing to engage Sills in the reunification process. We have long held that few consequences of judicial action are so grave as the severance of natural family ties. See Osborne v. Ark. Dep't Human Servs. , 98 Ark. App. 129, 252 S.W.3d 138 (2007). In Tuck v. Arkansas Department of Human Services , 103 Ark. App. 263, 266-67, 288 S.W.3d 665, 667-68 (2008), we held,
Once a child has been adjudicated dependent-neglected, there is a presumption that DHS will provide services to preserve and strengthen the family unit. Benedict, supra. A parent's right to the care and control of his or her child is a fundamental liberty, and termination of parental rights is an extreme remedy in derogation of those rights. See Jones v. Ark. Dep't of Human Servs. , 361 Ark. 164, 205 S.W.3d 778 (2005). This fundamental liberty interest does not evaporate simply because the mother and father have not been model parents. See Osborne , supra. ... If anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting State intervention into ongoing family affairs. Id.
Accordingly, when the State moves to destroy weakened familial bonds, it must provide parents with fundamentally fair procedures. See id. Our Juvenile Code requires a dependency-neglect petition to set forth the names of the juvenile's parents and putative parents and designate them as defendants. Ark. Code Ann. §§ 9-27-311(a)(2), (a)(6), and (c) (Repl. 2008). It also provides that all adult defendants shall be served with a copy of the petition and either a hearing *257 notice or an order to appear, as provided in the Arkansas Rules of Civil Procedure. Ark. Code Ann. § 9-27-312 (Repl. 2008). These elemental protections serve to identify the juvenile and his parents, place them within the system, and facilitate the provision of services in hopes of preserving the family.
While we continue to uphold the principles set forth in Tuck , we find the facts presented in this record are distinguishable from Tuck . In Tuck , the parent was not made a party and had no right to participate before the termination. Here, Sills was named as a party, was made aware of the DHS action, had the right to participate in the proceedings, and did participate in the first two hearings. Despite knowing of the open juvenile case, he failed to stay apprised of the progress or inquire into what was necessary to maintain his parental rights. DHS informed the court that Sills took no action to keep advised, such as phone calls, emails or letters, until he received the letter addressing the potential of termination. While Sills told the court that he did not know who to contact at DHS, this was a matter for the court's credibility determination. Ultimately, he was appointed parent counsel and appeared at the termination hearing with the benefit of counsel. Consequently, we are not convinced that Sills was denied "fundamentally fair procedures" as discussed in Tuck . Nonetheless, we take this opportunity to remind DHS and the ad litem of the magnitude and importance of the rights involved in termination cases. DHS has the duty to ensure that both parents are provided the resources necessary to promote positive, nurturing parent-child relationships and that they are given ample opportunity[5] to reunite with their children before the natural, familial bonds are severed and a forced dissolution of their parental rights occurs.
Sills also argues that he was hampered in defending his rights in the proceeding by not having an attorney to represent him. Admittedly, Sills was not represented by counsel until the petition to terminate had been filed. However, the court did not commit error in this regard. Under the juvenile code, Sills had a right to be represented by counsel at all stages of the proceedings. Ark. Code Ann. § 9-27-316(h)(1)(A). However, the court has a statutory duty to appoint counsel for parents in dependency-neglect proceedings only if the parent is indigent and is also the parent or custodian from whom custody was removed. Ark. Code Ann. § 9-27-316(h)(1)(B). See also Chaffin v. Ark. Dep't of Human Servs. , 2015 Ark. App. 522, 471 S.W.3d 251. Here, Sills was not a parent "from whom custody was removed," and he was not entitled to appointed counsel under the statute before the process moved to termination of his rights. Ark. Code Ann. § 9-27-316(h)(1)(D). Here, the court appointed counsel for Sills almost three months before the hearing on the petition to terminate parental rights. Even if the court had erred in this regard, there is authority for the proposition that any "failure" to appoint counsel at early stages of the dependency-neglect process is harmless if the parent has an attorney before the termination hearing. See Jefferson v. Ark. Dep't of Human Servs. , 356 Ark. 647, 158 S.W.3d 129 (2004) ; Briscoe v. State , 323 Ark. 4, 912 S.W.2d 425 (1996).
Next, Sills argues that DHS never made any effort to provide him with *258 any services and never even gave him the case plan; thus, DHS denied him due process. As discussed earlier under the incarceration ground, DHS is not required to provide services to a parent while he or she is in prison as a prerequisite to termination or to contemplate what it will do when the parent is released. Moses v. Ark. Dep't of Human Servs. , 2014 Ark. App. 466, 441 S.W.3d 54. Because DHS did not have to provide services pursuant to the ground on which it sought to terminate Sills's parental rights, his argument fails. In addition, it does not appear that Sills made this particular argument below. Granted, Sills did complain to the court about DHS's failure to fully include him in the proceedings, but he did so only in a way so as to excuse his failure to complete the case plan and to prevent the orders documenting his noncompliance from being admitted into evidence. He did not specifically make the due-process argument he makes on appeal. A party cannot change his or her argument on appeal and is bound by the scope of his or her arguments made to the circuit court. Andrews v. Ark. Dep't of Human Servs. , 2012 Ark. App. 22, at 9, 388 S.W.3d 63, 68 (citing Holiday Inn Franchising, Inc. v. Hotel Assocs., Inc. , 2011 Ark. App. 147, 382 S.W.3d 6 ). Even in termination cases, we will not address arguments raised for the first time on appeal. Id. (citing Lyons v. Ark. Dep't of Human Servs. , 2009 Ark. App. 271 ).
Affirmed.
Klappenbach and Vaught, JJ., agree.

This information was provided to the court in the affidavit of facts supporting the petition for emergency custody and dependency-neglect.

This information was provided to the court in the affidavit of facts supporting the petition for emergency custody and dependency-neglect.

The mother's parental rights were terminated by separate order dated April 21, 2017, and she is not a party to this appeal.

While Sills's expected release date was August 2017, it appears that he was released in June 2017 as his address in the amended notice of appeal changed from a Department of Corrections address to a street address in Jonesboro.

Here, Sills was incarcerated and unable to attend scheduled hearings without the benefit of a transport order. Since Sills did not have counsel prior to the petition to terminate, the task of securing this order most naturally would fall on counsel for DHS.