Cite as 2025 Ark. App. 302

# ARKANSAS COURT OF APPEALS
## DIVISION III
#### No. CV-24-726

| | |
|---|---|
| EDDIE BRILEY<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD<br><br>APPELLEES | Opinion Delivered May 14, 2025<br><br>APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT<br>[NO. 35JV-23-214]<br><br>HONORABLE EARNEST E. BROWN, JR., JUDGE<br><br>AFFIRMED |

**CASEY R. TUCKER, Judge**

Eddie Briley appeals the termination of his parental rights to his son, MC, by the Jefferson County Circuit Court.  The circuit court terminated the parental rights of MC's mother, Sharell Lipsey ("Lipsey"), as well, but she has not appealed. Briley argues on appeal that he was denied due process to such an extent that the resulting prejudice was not harmless error.  We affirm.

On May 11, 2023, MC, who was fourteen years old,[1] appeared in court for a delinquency hearing.  At that time, his paternal grandmother, Rosie Thomas, with whom he was living, told the court that MC could no longer live with her.  Thomas also told the court that Lipsey's whereabouts were unknown, that Briley was incarcerated, and that there were

---

[1]MC was born on February 4, 2009.

no other family members available to take MC. The court ordered the Arkansas Department of Human Services (the Department) to take emergency custody of MC.

On May 15, 2023, the Department filed a petition for dependency-neglect. The petition listed Briley as MC's putative father. The court entered an ex parte order for the Department to take emergency custody of MC on May 16. On May 17, the Department filed a motion for Briley to appear for the probable-cause hearing via Zoom, and the court entered the order on the same day. Sergeant T. Langford of the Jefferson County Sheriff's Department served Briley with the petition for dependency-neglect, summons, and putative-father notice at W.C. "Dub" Brassel Detention Center on May 30.

The court held the probable-cause hearing on May 18, twelve days *before* Briley was served with the petition. The probable-cause order notes that Briley was excused from the hearing because he was in jail, and the jail was unable to make him available by Zoom. The court found that the Department had been involved with MC's family since June 2009; the grandmother refused to allow MC to continue to live with her; and Lipsey's whereabouts were unknown. The court found probable cause that the emergency conditions that necessitated MC's removal from his parent—Lipsey—continued. Thus, it was necessary for MC to remain in the custody of the Department. The court also found that the parents had provided the name and contact information for MC's adult relatives, one of the persons being Rosie Thomas, and had provided Briley's name as MC's putative father and had listed him as being in the Jefferson County jail. The court appointed Therese Free as counsel for

Lipsey and stated, "Parent counsel is appointed for Eddie Briley, Jr." The court also appointed a CASA and set an adjudication hearing for June 29, 2023.

Briley was not present for the adjudication hearing, but he was represented by attorney Phil Beuth. The transcript from the adjudication hearing is not part of this record. The court found that Briley is MC's putative father of MC. Lipsey's whereabouts were still unknown; Briley remained incarcerated; Rosie Thomas continued to be unwilling to care for MC; and there were no other relatives or friends willing and able to care for him. The court ordered that MC remain in the custody of the Department due to parental unfitness. The goal of the case remained reunification with a fit parent with a concurrent goal of placement with a relative of MC's fictive kin. The court approved the Department's case plan.

Attorney Zoe Jackson ("Jackson") entered her appearance as Briley's appointed parent counsel on October 17, 2023. The court held a review hearing on November 2, and Jackson appeared on Briley's behalf. Again, the hearing transcript was not made part of this record. The court found that MC should remain in the custody of the Department. The goal of the case remained reunification with concurrent planning being deemed inappropriate. The court set the permanency-planning hearing for February 1, 2024.

Following the permanency-planning hearing, the court entered its order on April 4, 2024. The court found that the parents were not substantially compliant with the case plan and orders of the court. It also found that aggravated circumstances existed such that there was little likelihood that continued efforts by the Department would result in a successful

3

reunification. The court ordered that MC remain in the custody of the Department and that the Department continue reunification services until the court determined they were no longer needed, terminated parental rights, or otherwise finalized a permanency plan. The court changed the goal of the case to adoption.

The Department filed a petition for termination of parental rights on February 27, 2024, naming Briley as MC's father[2] and alleging that MC had been adjudicated dependent-neglected and continued out of the custody of his parent for twelve months, and despite the Department's best efforts, the conditions that caused the removal had not been corrected. The certificate of service of the petition shows that it was served on Briley's attorney, Jackson. Additionally, the record contains proof of service reflecting that Warden Michelle Gray delivered the summons and pleading to Briley at the North Central Unit of the Arkansas Division of Correction on March 6, 2024. In its petition, the Department alleged that Briley was sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life. The Department claimed in part:

> Eddie Brieley [sic] Jr. has been incarcerated throughout the duration of the case. Eddie Briley Jr. has expressed no interest in his child, and has not coordinated with the Department, despite the departments [sic] best efforts to contact him and encourage his involvement. Despite the fact that the juvenile is placed with Mr. Briley's mother,[3] reducing the burden he would bear by becoming involved, he has not elected to become involved in any fashion. Finally, the juvenile has indicated to the Department that he has no wish to be reunified with Mr. Briley.

---

[2]Briley was found to be MC's father by a judgment of paternity in 2014.

[3]According to the record, MC was no longer living with Thomas when the Department filed the petition to terminate parental rights.

4

The Department also claimed:

> The total lack of interest in, and effectively absolute abandonment of, the juvenile [MC] is such that their parental rights should be terminated, such that the Department may be able to find some parent who is interested in the life of this juvenile, and able to serve as the parent that Ms. Lipsey and Mr. Brieley [sic] have manifestly shown no interest in.

Finally, the Department alleged that termination of parental rights was in MC's best interest.

Jackson appeared at the termination hearing on May 9 ostensibly on behalf of Briley, who was not in attendance.[4] When asked, she informed the court that she had not had any contact with Briley. When Lipsey's attorney stated that Briley was incarcerated in Calico Rock, Ms. Jackson asked, "He's in what?" Evidently, she had not expended much effort in contacting her client.

The Department called Kamelia Edwards, a family service worker supervisor, who testified that Lipsey told the Department that she did not want any involvement in the case, and the Department had not had any contact with Briley. When asked if the Department had contact information for Briley, she answered that he was incarcerated. As to Briley's release date, Edwards stated that he was to be released in 2027. She testified that Briley was unable to work with the Department or participate in services due to his incarceration.

---

[4]Briley filed a grievance with the North Central Unit, where he was incarcerated, on the date of the hearing, after he was denied attendance at the Zoom hearing. The warden responded that the North Central Unit could not provide his attendance by Zoom because it was not provided the Zoom link.

Edwards testified that MC was in therapeutic foster care, and his foster parent was great at working with him, but MC was not doing well in school and was struggling with being in foster care. Edwards testified that it would be in MC's best interest for the court to grant the petition to terminate and that MC would be in danger if returned to the custody of his parents. According to Edwards, an adoption data match was conducted and returned a list of fifty possible adoptive families, which shows that MC is highly adoptable.

In response to questioning by Chrishauna Taggart, the attorney ad litem, Edwards testified that Briley had not been an involved parent, and MC had expressed concerns of physical abuse by his father. She then stated, "We have no knowledge of his capacity outside of him being incarcerated, so he definitely wouldn't be able to be a caretaker for [MC]."

Next, Jackson cross-examined Edwards. She asked whether it was necessary for Briley to be at the hearing, to which Edwards responded that it was necessary since Briley is MC's father. Inexplicably using "we" instead of "you" or "the Department," Jackson then asked, "And we haven't been able to reach him?"[5] Edwards responded no. The following then took place:

MS. JACKSON:     First of all, has he been present since the beginning of the case?

MS. EDWARDS:     No.

MS. JACKSON:     Did we ever try to reach out to him at the beginning of the case:

---

[5]It appears that perhaps Jackson did not understand her role in the case as related to the parties and the witness.

MS. EDWARDS:      Yes.

MS. JACKSON:      And when we tried to reach out to him, did he make it clear that he was not going to be taken [sic] any act of responsibility in this case?

MS. EDWARDS:      We never got a response and if I can just remind you that [MC] was removed from [Briley's mother], his grandmother.

MS. JACKSON:      Do you think that [MC] would have wanted his father present today or would it have upset him?

MS. EDWARDS:      I think he would have appreciated it.  He would have appreciated it.

Ms. Jackson then asked the court whether it would be appropriate for her to move for a continuance, "or do you think that that's necessary at this time?"  The court turned to the Department for its position on a continuance.  The Department stated that it saw no grounds for a continuance to allow potential involvement by someone who, to date, had expressed no interest in being involved.  The court then concluded that sometimes Briley was present by Zoom[6] and that his presence would not "materially impact the court's decision," so it was not necessary to continue the hearing.

At the conclusion of the hearing, the court found aggravated circumstances in that there was little likelihood of any services resulting in successful reunification. It found that the risk of harm to MC, if returned to his parents, was great.  Briley was incarcerated and unable to take MC home.  MC had been in an out-of-home placement for two days shy of

---

[6]Nothing in the record before us shows that Briley had ever appeared by Zoom.

7

twelve months. The Department could not provide services to Briley since he was incarcerated. The court found that MC is highly adoptable and that it was in MC's best interest that the parental rights of both parents be terminated. The court went on to relieve Lipsey's counsel and Briley's counsel, Jackson.[7] The court continued the services of the CASA and the caseworker. The court clarified that it was granting the petition on all grounds asserted by the Department in its petition and filed the written order terminating parental rights on July 22, 2024.

On July 23, 2024, Briley filed a pro se petition for expedited hearing, stating that he had not attended the May 18, 2023, probable-cause hearing because he was served with the petition for dependency-neglect twelve days after the hearing had taken place. Briley also alleged that on March 4, 2024, he was served by Warden Michelle Gray with a petition for termination of parental rights, with the hearing scheduled for May 9, 2024. Again, he was unable to attend due to reasons beyond his control. Briley alleged that he tried to be at each scheduled hearing. On August 8, 2024, the court entered an order for Briley to participate in an attorney-client privileged meeting via Zoom. Briley filed a timely notice of appeal.

Briley argues on appeal that this court should reverse the termination of his parental rights due to the violation of his due-process rights, even though he did not raise and obtain rulings from the circuit court on the arguments he now raises. Specifically, he asserts that he was not provided with sufficient service of process, that his attendance was not secured at

---

[7]The court later realized its error in relieving counsel and entered an order setting aside the portion of the termination order that severed the attorney-client relationship.

any of the hearings in this case, and that his court-appointed counsel wholly failed to act effectively in his stead.

In order to preserve arguments for appeal, even constitutional ones, the appellant must obtain a ruling from the circuit court. *Chacon v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 277, 600 S.W.3d 131. This is true even when the Department's efforts to notify the appellant of proceedings to terminate his parental rights are less than satisfactory. *Id.* However, "few consequences of judicial action are so grave as the severance of natural family ties." *Tuck v. Ark. Dep't of Hum. Servs.*, 103 Ark. App. 263, 267, 288 S.W.3d 665, 668 (2008). Thus, when the State seeks to destroy weakened familial bonds, it must provide fundamentally fair procedures. *Id.*

Briley maintains that the third *Wicks* exception applies so that a contemporaneous objection was not required for this court to consider the arguments he now raises. *See Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). In *Edwards v. Arkansas Department of Human Services*, 2016 Ark. App. 37, at 12, 480 S.W.3d 215, 222, this court explained that in *Wicks*, our supreme court reaffirmed the importance of the contemporaneous-objection rule "while outlining a few finite exceptions to the rule." The third exception, which is extremely rare, concerns the court's duty to intervene, even though there is no objection, to correct a serious error either by an admonition to the jury or by ordering a mistrial. *Id.* This court explained:

> We have interpreted the third *Wicks* exception to mean that "no objection is required to preserve an issue for appeal where the error is so flagrant and egregious that the trial court should, on its own motion, have taken steps to remedy it." Therefore, in this case, we must determine whether appellant's absence from the termination hearing was a flagrant and egregious error

requiring the trial court to intervene. Federal courts have found that prison inmates do not have a due-process right to be present at civil hearings. This includes termination proceedings, as long as the inmate-parent is represented by counsel at the hearing, the counsel participates by making evidentiary objections and cross-examining witnesses, and the inmate has the opportunity to present testimony by deposition or other recorded format if that testimony could influence the outcome of the proceedings.

*Id.* at 12, 480 S.W.3d at 222 (citations omitted). *Edwards* was a termination-of-parental-rights case in which the appellant was incarcerated. The court held that the third *Wicks* exception did not apply to the appellant's due-process-violation argument that he was neither in attendance at, nor participated in, the termination hearing. The court stated that there was no indication that appellant's due-process rights could not be safeguarded in his absence, so there was no need for the circuit court to step in on its own motion. The appellant also argued lack of proper service, but he did not raise this issue in the circuit court. This court held that since his attorney had appeared and fully participated in the hearing, without objecting to service, this argument was waived.

In *Vogel v. Arkansas Department of Human Services*, 2015 Ark. App. 671, 476 S.W.3d 825, this court also addressed the application of the third *Wicks* exception in termination cases. One issue in *Vogel* was whether the appellant's attorney's failure to require proper proof of personal service on the appellant was a flagrant and egregious error requiring the circuit court to intervene pursuant to *Wicks*. The appellant did not dispute that her attorney received the termination petition pursuant to Arkansas Rule of Civil Procedure 5 but argued for the first time on appeal that she was not properly served with the initial notice of the probable-cause hearing pursuant to Arkansas Rule of Civil Procedure 4. While she was

10

served with the notice by substitute service at the Wrightsville Unit, she did not also receive the notice by legal mail as required under Rule 4. Since the appellant did not apprise anyone at the trial level of the improper service of the notice of the probable-cause hearing, no one had any reason to doubt that service of the petition to terminate on her attorney alone—and not her personally—was proper. This court found that her attorney's failure to require personal service of the termination petition on the appellant was not a flagrant and egregious error sufficient to invoke the third *Wicks* exception.

With applicable precedent in mind, we consider Briley's position that we should apply *Wicks* and consider the merits of his argument that he was not provided sufficient service of process. It is true that pursuant to the Arkansas Code Annotated section 9-27-341 (Supp. 2023), the Department was required to serve Briley with the initiating petition in this case pursuant to Arkansas Rule of Civil Procedure 4. Ark. Code Ann. § 9-27-341(b)(2)(A). Rule 4 provides that, since Briley was incarcerated, the Department should have served him by serving the administrator of the institution, who, in turn, would "promptly" deliver the process to Briley *and* the Department should have served him by first-class mail marked as "legal mail." Ark. R. Civ. P. 4(f)(4). The record demonstrates that the Department served Briley with the initiating petition while he was in jail by serving Sergeant T. Langford, who delivered the process to Briley, thus meeting the first requirement of Rule 4. However, there is no evidence that the Department met the second requirement of Rule 4(f)(4) by also mailing the petition by first-class mail, marked as "legal mail." The record before us reflects

that Briley never informed anyone prior to the service of the petition to terminate parental rights that he had been insufficiently served with the initial petition.

Assuming the initial service on Briley was proper, the Department was required to serve the petition to terminate pursuant to Arkansas Rule of Civil Procedure 5, which requires service on the attorney for the party. Ark. Code Ann. § 9-27-341(b)(2)(A); Ark. R. Civ. P. 5(b). The Department served Jackson, who by then was Briley's attorney, and also served Briley by serving the warden of the North Central Unit who, in turn, delivered the petition to him.

The facts in the present case are on point with *Vogel* in that service of the initial petition on Briley complied with the first requirement of Rule 4, and Briley, though not participating himself, thereafter was appointed counsel who participated in the proceedings on his behalf. Participation in the case after allegedly defective service waived any objection to the inadequacy of the original service. *Vogel, supra*. Briley did not apprise the parties or the court that service had not fully complied with Rule 4. As in *Vogel*, the Department then complied with Rule 5 by serving Briley's attorney. As in *Vogel*, we find that Briley's attorneys did not commit a flagrant and egregious error sufficient to invoke *Wicks* by failing to require proof of Rule 4 service.

We now turn to Briley's argument that he was denied due process because his attendance was not secured at any of the hearings, and his appointed counsel "wholly failed to act effectively in his stead." In *Vogel, supra*, in addition to her argument regarding service, the appellant argued that her absence from the termination hearing was flagrant error and

12

called for the application of the third *Wicks* exception.  This court disagreed, stating that incarcerated parents do not have a due-process right to be present at the termination hearing as long as (1) the incarcerated parent is represented by counsel at the hearing, and counsel makes evidentiary objections and cross-examines witnesses; and (2) the incarcerated parent has the opportunity to present testimony by deposition or other recorded format.

In *Vogel*, the record was not developed enough for the court to determine whether the appellant had had the opportunity to present testimony *that would have influenced the outcome of the case*.  As a result, this court considered her attorney's performance and determined that the attorney had "presented her case effectively."  *Vogel*, 2015 Ark. App. 671, at 10, 476 S.W.3d at 831. This court found it was unlikely that the appellant's deposition or recorded testimony would have made a difference under the circumstances, considering the undisputed facts that she had already lost her parental rights to three children, she had ongoing drug problems, and she was currently incarcerated.

As in the present case, the appellant in *Vogel* claimed that her attorney was ineffective. On this point, the facts in *Vogel* and the facts in the case at bar sharply diverge: in *Vogel*, this court stated that the appellant's attorney had worked with the appellant for several months and demonstrated a fairly thorough understanding of the case.  Moreover, that attorney cross-examined the witnesses effectively and demonstrated that the appellant had met most of the case-plan requirements.  In the end, the facts in *Vogel* overwhelmingly favored termination, and any alleged shortcomings of the attorney did not affect the outcome.

In the present case, Jackson did not communicate with Briley, did not develop an understanding of the case, and did not represent Briley well. However, at the end of the day, the facts of the case before us favor termination, as did the facts in *Vogel*. The evidence in the current case is that Briley is incarcerated, and his sentence does not end until 2027. MC will turn eighteen on February 4, 2027. Neither Briley's participation nor effective representation by his attorney could change these facts. Briley cannot state that had he had the opportunity to present testimony at any of the hearings, *that it would have influenced the outcome of the case*. And Briley does not challenge the facts on appeal. In addition to a finding that termination is in the best interest of the juvenile, only one statutory ground is necessary to terminate parental rights. *Bradley v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 315, 669 S.W.3d 859; Ark. Code Ann. § 9-27-341. Briley is serving time after being sentenced in a criminal proceeding for a period of time that constitutes a substantial period of MC's life, meeting the statutory ground found in Ark. Code Ann. § 9-27-341(b)(3)(B)(viii).

We find the facts of this case with regard to both the Department's and Jackson's performances deeply troubling. There is little evidence that the Department did much at all beyond serving petitions to inform and involve Briley.[8] It admittedly did not contact him, though he was incarcerated. Jackson, Briley's appointed attorney, did not contact him and did not even seem to know whether he wanted to retain his parental rights. We note also

---

[8]The Department is not required to provide services to an incarcerated parent when termination is sought on the incarceration ground. *See Sills v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 9, 538 S.W.3d 249.

that the circuit court should have done more to provide for Briley's participation in the hearings, even if only by providing a Zoom link to the appropriate jail or prison unit. Under almost any other circumstances, we would reverse this case. However, the unchallenged fact of the matter is that Briley is serving a prison term for a substantial period of MC's life—indeed, as MC ages into adulthood. Moreover, the unchallenged evidence supports the determination that it is in MC's best interest to terminate Briley's parental rights. Under the specific facts of this case, we do not find that *Wicks* applies to salvage Briley's previously unraised due-process arguments. Parental rights must bow to the health and well-being of the child. *Bradley*, *supra*. We affirm.

Affirmed.

HARRISON and BARRETT, JJ. agree.

*Leah Lanford*, Arkansas Commission for Parent Counsel, for appellant.

*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.