LARRY D. VAUGHT, Judge
David Fraser appeals the December 5, 2017 order terminating his parental rights to his daughter, A.F. (born December 22, 2009), entered by the Polk County Circuit Court. On appeal, Fraser contends that the circuit court clearly erred in finding that statutory grounds supported termination *889 and that termination was in A.F.'s best interest. We affirm.
On November 6, 2015, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect, alleging that on November 2, 2015, it had removed six-year-old A.F. and her siblings, A.R. (born May 3, 2013) and C.S. (born February 26, 2015), from the custody of their mother, Whitney Reynolds.[1] The affidavits accompanying the petition detailed an extensive substantiated history of maltreatment of Reynolds's children dating back to 2010, which included inadequate food, medical neglect, environmental neglect, inadequate supervision, abandonment, physical abuse, and the children being born with drugs in their systems.
The affidavits state that Fraser is the father of A.F. and that he resided in the Arkansas Department of Correction (ADC).[2] The affidavits state that in September 2015, the Arkansas Child Abuse Hotline received a report that A.R. had been the victim of physical abuse by a third-party offender. A.R. received medical treatment and was scheduled to receive follow-up treatment; however, Reynolds did not take A.R. to the follow-up appointment. A second follow-up appointment was made, yet Reynolds did not take A.R. to that appointment either. A third follow-up appointment was made during which a hair-follicle sample was taken from A.R. The results of the hair-follicle test were positive for THC and methamphetamine. The affidavits state that when confronted with the test results, Reynolds denied drug use and stated that she had concerns about Chris Sanders being around her children but that he was the only person she had to watch them. The circuit court entered an ex parte order for emergency custody on November 6, 2015.
On November 19, 2015, Fraser filed a response to DHS's petition, objecting to DHS having custody of A.F. He also requested that A.F. be placed in the custody of her aunt and uncle, that he and A.F. be appointed attorneys, and that a hearing be held on these issues. The circuit court entered a probable-cause order on November 23, 2015, and an adjudication order was entered on December 23, 2015, finding the children dependent-neglected. The court further found that Fraser did not contribute to the dependency-neglect of the children, but the court did not make any findings with respect to his fitness for custody or visitation because he had not appeared before the court and no evidence was available regarding his fitness. The court noted in the adjudication order that Fraser was residing in the ADC. The goal of the case was reunification with the concurrent goal of "permanent guardianship/permanent-relative placement/adoption."
A review order was entered on March 16, 2016, wherein the circuit court acknowledged receipt of a sentencing order that found Fraser had been sentenced to twenty years in the ADC for possession of a firearm by certain persons. The court noted again that Fraser had not appeared before the court and that Fraser was not fit for visitation or custody. A second review order was entered on June 13, 2016, wherein the court stated that Fraser had not appeared before the court and was not participating in the matter.
*890 A permanency-planning order was entered on October 11, 2016. Fraser did not appear at the hearing, and the circuit court found that he had not complied with the case plan and had not been participating in the case. A third review order was entered on December 22, 2016. Again, the court found that Fraser did not appear and was not participating in the matter. He was, however, ordered to follow the court orders and the case plan.
On April 26, 2017, Fraser was appointed an attorney. The next day, April 27, DHS filed a petition to terminate the parental rights of Fraser, Reynolds, and Sanders. On DHS's motion, this petition was dismissed on August 15, 2017. On August 18, 2017, DHS filed a second petition for termination of parental rights. Against Fraser, the petition alleged that termination was supported by the following grounds: (1) noncustodial parent's failure to remedy, Arkansas Code Annotated section 9-27-341(b)(3)(B)(i)(b) (Supp. 2017); (2) willful failure to support, section 9-27-341(b)(3)(B)(ii)(a) ; (3) other factors, section 9-27-341(b)(3)(B)(vii)(a) ; (4) sentenced in a criminal proceeding, section 9-27-341(b)(3)(B)(viii) ; (5) aggravated circumstances, section 9-27-341(b)(3)(B)(ix)(a)(3)(A) , (B)(i) ; and (6) abandonment, section 9-27-341(b)(3)(B)(iv). DHS further alleged that termination of Fraser's parental rights was in A.F.'s best interest.
The termination hearing was held on November 6, 2017. Tammy Broadway, the DHS caseworker, testified that the children were initially removed from Reynolds's custody on November 2, 2015. Broadway stated that Fraser had been incarcerated during the majority of the case, there was no visitation between Fraser and A.F., and A.F. did not know Fraser as her father "in any way[,] shape[,] or form." Broadway stated that no services had been offered to Fraser. She testified that she met him one time at Reynolds's home in September 2016 when he was on parole. She said that she had invited him to a September hearing but that he did not attend. Broadway also stated that she understood since that time, Fraser had been arrested and returned to prison. However, she said that when he was not imprisoned, he did not call either her or DHS to request services. The only time she heard from Fraser was when he mailed her a letter. In response, she mailed him a staffing invitation. Broadway admitted that none of the case plans included Fraser, yet she testified that DHS stood ready to offer him services. Broadway testified that DHS recommended termination of Fraser's parental rights to A.F.
The CASA volunteer, Ken Marks, also recommended that Fraser's parental rights to A.F. be terminated based on his lack of contact with her, his criminal history, and his incarceration. Marks testified that A.F. had been out of Reynolds's custody for two years, that she was in a stable home, and that she was thriving there.
Shirley Watkins, an adoption specialist, testified that A.F. has no major medical issues that would prevent her from being adopted. Watkins added that she identified sixty-two families that would adopt all three children as a sibling group.
Fraser, who was incarcerated when this case opened in 2015, testified that he is serving a twenty-year sentence. He stated that he was released on parole on August 8, 2016, but his parole was revoked on December 18, 2016. He expected to be paroled again in February 2018. He further testified that during his current incarceration, he has had many disciplinary violations, including violations for group disruption, battery, insolence to a staff member, failure to obey an order, and a threat to inflict injury. He said that when *891 he is released, he plans to live with his grandmother and work for a company that remodels homes.
Fraser further testified that it was never his intention to not have a relationship with A.F. or to abandon her. He said that while incarcerated, he mailed DHS a couple of letters asking to get to know A.F., but he did not receive a response. He said that he called A.F. a couple of times when he was not incarcerated and talked to her. He stated that it was his desire to maintain a relationship with A.F.
At the conclusion of the hearing, the circuit court orally granted DHS's petition to terminate Fraser's parental rights to A.F. The order granting termination was entered on December 5, 2017. Fraser's appeal followed.
Termination-of-parental-rights cases are reviewed de novo. Pine v. Ark. Dep't of Human Servs. , 2010 Ark. App. 781, at 9, 379 S.W.3d 703, 708. Grounds for termination of parental rights must be proved by clear and convincing evidence, which is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. Id. , 379 S.W.3d at 708. The appellate inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. Id. , 379 S.W.3d at 708. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Id. , 379 S.W.3d at 708. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. Id. , 379 S.W.3d at 708. Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights; however, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. Id. , 379 S.W.3d at 708. As with all issues addressing child placement, the appellate court affords heightened deference to the circuit court's superior position to observe the parties personally and weigh credibility. Dinkins v. Ark. Dep't of Human Servs. , 344 Ark. 207, 215, 40 S.W.3d 286, 292-93 (2001).
In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Pine , 2010 Ark. App. 781, at 9-10, 379 S.W.3d at 708-09 (citing Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii) (Repl. 2009) ). Additionally, the circuit court must also find by clear and convincing evidence that one or more statutory grounds for termination exists. Id. at 10, 379 S.W.3d at 709 (citing Ark. Code Ann. § 9-27-341(b)(3)(B) ).
In this case, the circuit court found that termination of Fraser's parental rights was supported by five statutory grounds: (1) noncustodial parent's failure to remedy, (2) willful failure to support, (3) other factors, (4) aggravated circumstances, and (5) abandonment. On appeal, Fraser challenges each of these grounds, plus the additional sentenced-in-a-criminal-proceeding ground.[3] We address the sentenced-in-a-criminal-proceeding *892 ground first.
Arkansas Code Annotated section 9-27-341(b)(3)(B)(viii) provides that one ground that supports termination of parental rights is the "parent is sentenced in a criminal proceeding for a period of time that would constitute a substantial period of the juvenile's life." Fraser testified that he was sentenced to twenty years' imprisonment. The circuit court's March 16, 2016 review order acknowledged receipt of a sentencing order that found Fraser had been sentenced to twenty years in the ADC for possession of a firearm by certain persons. Based on these facts, we hold that Fraser's twenty-year sentence encompassed a substantial period of A.F.'s life, who was eight years old at the time of the November 2016 termination hearing. Our holding is consistent with prior cases in which termination orders relying on the sentenced-in-a-criminal-proceeding ground were affirmed: Moore v. Ark. Dep't of Human Servs. , 333 Ark. 288, 969 S.W.2d 186 (1998) (twenty-eight-year prison sentence, one-year-old child); Fields v. Ark. Dep't of Human Servs. , 104 Ark. App. 37, 44, 289 S.W.3d 134, 139 (2008) (ten-year concurrent prison sentences, ten-month-old child); Moses v. Ark. Dep't of Human Servs. , 2014 Ark. App. 466, 441 S.W.3d 54 (five-year sentence, less than one-year-old child and less than one-month-old child); Smith v. Ark. Dep't of Human Servs. , 2013 Ark. App. 753, 431 S.W.3d 364 (five-year prison sentence for mom and four-year prison sentence for dad, five- and six-year-old children); Hill v. Ark. Dep't of Human Servs. , 2012 Ark. App. 108, 389 S.W.3d 72 (three-year prison sentence, two-year-old child).
Fraser argues that the circuit court erred in relying on the sentenced-in-a-criminal-proceeding ground because there is no evidence in the record as to when his sentence began. We note that Fraser's sentencing order is not in the record. However, to the extent that Fraser argues that evidence of his sentence had to be placed into evidence by DHS, he is mistaken. Edwards v. Ark. Dep't of Human Servs. , 2016 Ark. App. 37, at 11, 480 S.W.3d 215, 221. Further, there is evidence of when Fraser's sentence was imposed. In a November 22, 2016 CASA report, it was stated that Fraser disclosed on November 19, 2016, that he had recently been released from prison after having served five years of a twenty-year sentence. Based on this information, Fraser's twenty-year sentence was imposed in 2011, when A.F. was two years old. We hold that this sentence-from 2011 to 2031-is a period of time that would constitute a substantial period of A.F.'s life.
We further reject Fraser's argument that it is error to rely on the sentenced-in-a-criminal-proceeding ground in his case because he testified that he expected to be released in February 2018. We look at the length of the prison sentence, not the potential release date, when reviewing whether this statutory ground was met. Moses , 2014 Ark. App. 466, at 5, 441 S.W.3d at 57 (citing Bowman v. Ark. Dep't of Human Servs. , 2012 Ark. App. 477, 2012 WL 4009596 ). For these reasons, we affirm the circuit court's finding that DHS proved the sentenced-in-a-criminal-proceeding *893 ground in support of its order terminating Fraser's parental rights.[4]
For his second point on appeal, Fraser challenges the circuit court's best-interest finding. In determining whether termination is in the best interest of the juvenile, the circuit court must consider the likelihood that the juvenile will be adopted and the potential harm that would be caused by returning the juvenile to the custody of the parent. Chaffin v. Ark. Dep't of Human Servs. , 2015 Ark. App. 522, at 5, 471 S.W.3d 251, 255 ; Ark. Code Ann. § 9-27-341(b)(3)(A)(i), (ii). Adoptability and potential harm, however, are merely two factors to be considered and need not be established by clear and convincing evidence. Id. , 471 S.W.3d at 255. The evidence presented on potential harm must also be viewed in a forward-looking manner and considered in broad terms, but a circuit court is not required to find that actual harm will result or to affirmatively identify a potential harm. Id. , 471 S.W.3d at 255.
Fraser argues on appeal that the circuit court clearly erred in finding that A.F. would be subject to potential harm if returned to his custody. He acknowledges his extensive criminal history and his multiple prison violations and concedes that these issues are "concerning," yet he argues that DHS should not be able to "shirk" its responsibility to incarcerated parents by failing to make reasonable efforts, pursuant to section 9-27-303(48)(A)(v), to provide services to them and then use its failure to support a potential-harm finding against those parents. More specifically, he argues that DHS's failure to provide visitation services to him while he was in prison created the lack of a bond with A.F.
This argument has no merit. The best-interest analysis in the termination context does not require proof that DHS make reasonable efforts to provide services. Ark. Code Ann. § 9-27-341(b)(3). What is required is that the circuit court consider the likelihood that A.F. will be adopted and the potential harm to her if she is returned to Fraser's custody. Ark. Code Ann. § 9-27-341(b)(3)(A)(i), (ii).
The circuit court found that A.F. is adoptable, and Fraser does not challenge that finding. Regarding the court's potential-harm finding, in our de novo review, we hold that the circuit court did not clearly err. The evidence showed that Fraser and A.F. have no relationship. They have no bond. Broadway testified that A.F. did not know Fraser as her father "in any way[,] shape[,] or form." There is no evidence in the record when Fraser last saw A.F. There is no evidence in this record that Fraser, while in prison, tried to contact A.F. directly-no calls and no letters. During the four months that Fraser was on parole, the only evidence of Fraser's contact with A.F. was his testimony that he called her a couple of times. Fraser offered no other evidence or witness testimony to corroborate his testimony. Further, Fraser has an extensive criminal history. He was incarcerated for nearly the entire duration of the two-year case, serving a twenty-year sentence. And he has had multiple (at least five) prison disciplinary infractions in 2017. Finally, there was evidence that A.F. was in a stable foster home and was thriving.
Based on this evidence, we hold that the circuit court did not clearly err in finding *894 that A.F. would be subject to potential harm if placed in Fraser's custody. Brumley v. Ark. Dep't of Human Servs. , 2015 Ark. 356, at 11-12, 2015 WL 5895440 (affirming circuit court's best-interest finding because the evidence demonstrated that the appellant had been incarcerated throughout the dependency-neglect case and had no relationship with the child). Accordingly, we affirm the circuit court's best-interest finding.
Affirmed.
Abramson and Glover, JJ., agree.

Reynolds is not a party to this appeal.

The affidavits also state that Thomas W. Duncan had been identified as the putative father of A.R. and that Chris Sanders had been identified as the putative father of C.S. Neither Duncan nor Sanders are parties to this appeal.

The circuit court's order did not include findings with respect to the sentenced-in-a-criminal-proceeding ground. Nevertheless, in our de novo review, we may hold that this ground for termination was proved even when not stated in the circuit court's order if it was pled as a ground in DHS's petition to terminate parental rights. Brumley v. Ark. Dep't of Human Servs. , 2015 Ark. App. 90, at 10, 455 S.W.3d 347, 354 (affirming a termination-of-parental-rights order based on grounds not stated in the circuit court's order although it was alleged in DHS's petition to terminate parental rights). In the instant case, the sentenced-in-a-criminal-proceeding ground was pled in DHS's petition to terminate parental rights.

Because only one statutory ground is required to be proved, we need not discuss the alternative statutory grounds relied on by the circuit court in terminating Fraser's parental rights. Shaffer v. Ark. Dep't of Human Servs. , 2016 Ark. App. 208, at 6, 489 S.W.3d 182, 185-86.